FILED BY CLERK

NOV -2 2005

COURT OF APPEALS
DIVISION TWO



IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| KELLY TISSICINO and KIRK NIELSON, individually and as wife and husband, | ) ) ) ) | 2 CA-CV 2005-0060 DEPARTMENT A |
| Plaintiffs/Appellants, | ) ) | O P I N I O N |
| v. | ) ) | |
| JUANITA PETERSON, a single woman, | ) ) | |
| Defendant/Appellee. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20036794

Honorable Charles S. Sabalos, Judge

REVERSED AND REMANDED

Stompoly, Stroud, Glicksman & Erickson, P.C.
  By Elliot Glicksman                                                                  Tucson
                                                    Attorneys for Plaintiffs/Appellants

Hazlett Law Firm
  By Carl E. Hazlett                                                                  Tucson
                                                    Attorneys for Defendant/Appellee

E C K E R S T R O M, Judge.

¶1 In this action for the wrongful death of their teenage son, Zachary, plaintiffs/appellants Kelly Tissicino and Kirk Nielson appeal from the grant of summary judgment in favor of defendant/appellee Juanita Peterson on their claim of negligent entrustment. Genuine issues of material fact exist as to (1) whether Juanita had the right to control the gun she had provided to her adult son, Timothy, and which he used to shoot Zachary, and (2) whether Juanita knew Timothy was incompetent to use it safely. A genuine issue of material fact also exists as to whether Timothy's shooting of Zachary was a supervening cause of his death that was unforeseeable to Juanita. Accordingly, we reverse summary judgment and remand this matter to the trial court for further proceedings.

¶2 In reviewing the trial court's ruling, we view the facts in the light most favorable to Tissicino and Nielson, the parties against whom summary judgment was granted. *See Great Am. Mtg., Inc. v. Statewide Ins. Co.*, 189 Ariz. 123, 124, 938 P.2d 1124, 1125 (App. 1997). Juanita's husband, Don, originally had given the gun to Timothy about twenty years earlier, and Don had re-taken possession of the gun because Timothy's brother had used it in a crime. At that time, Don had stated to Timothy, "I'm going to hang onto [the gun] because you let your brother go into your room and take it." For the next twenty years, the gun remained in Don's and Juanita's possession. Juanita testified at her deposition that Don had stored the gun in a drawer and had kept it for protection and that after Don had moved to a nursing home, Juanita had placed the gun in a typewriter case in the closet in a bedroom where Timothy stored clothes and other personal property.

2

¶3     Juanita testified that Timothy had never asked for the gun; rather, she had eventually requested that Timothy take the gun because she did not like having a gun around the house. Juanita also conceded she had been aware that Timothy had abused alcohol and drank regularly at the time she had given him the gun, that she had consumed alcohol with him in the four months preceding the shooting, and that Timothy accidentally had shot himself with a gun on a previous occasion. Within one or two weeks after Juanita gave the gun to Timothy, he shot Zachary accidentally. Timothy erroneously believed the gun was unloaded and pulled the trigger while pointing the gun at Zachary. Timothy admitted at his deposition that he was intoxicated at the time.

¶4     After Zachary's death, Timothy pled guilty to manslaughter and was sentenced to seven years in prison. Before sentencing, Timothy underwent a battery of intelligence and proficiency tests. Those tests revealed that Timothy had a below average intelligence quotient (IQ) of seventy-four, and his reading, spelling, and math skills were at a grade school level. After testing, psychologists determined he also suffered from brain damage and a cognitive disorder.

¶5     Juanita wrote a letter to the sentencing judge explaining that, while pregnant with Timothy, she had been the victim of extreme domestic violence. She added that she had used alcohol during that pregnancy. She stated that Timothy had suffered head trauma resulting from a serious automobile accident in 1977 and numerous motorcycle accidents. Juanita also maintained that Timothy had suffered from learning difficulties throughout his

school career and eventually had been placed into special education classes. She acknowledged in the letter to the sentencing judge that she was aware that Timothy had abused alcohol since the age of fourteen. Timothy's lawyer asserted in a sentencing memorandum that "Tim's long history of alcohol abuse and the strong possibility that he suffers from fetal alcohol syndrome . . . along with the extensively documented mental deficiencies Tim suffers from, call into question Tim's ability to reason right from wrong or to conform his conduct to the requirements of the law."

¶6        Tissicino and Nielson brought a wrongful death action against Juanita, but Juanita moved for summary judgment, arguing, *inter alia*, that she owed no duty to Tissicino, Nielson, or Zachary, because "a defendant [cannot] 'negligently entrust' property to its lawful owner," and Timothy was the undisputed owner of the gun. The trial court agreed, finding that Restatement (Second) of Torts § 390 (1965), was inapplicable because "in the cases under Restatement § 390, the liable party actually *owned* the chattel," and there was no genuine issue of material fact as to whether Juanita owned the gun. The trial court also found that Tissicino and Nielson had presented insufficient facts to demonstrate that Juanita knew or should have known her providing the gun to Timothy posed an unreasonable risk of harm to others. "We review the propriety of summary judgment de novo." *AHCCCS v. Bentley*, 187 Ariz. 229, 231, 928 P.2d 653, 655 (App. 1996). A motion for summary judgment should be granted when no genuine issues of material fact exist so that the movant is entitled to judgment as a matter of law. *Id.*

4

¶7        Tissicino and Nielson argue there was a genuine issue of material fact as to who owned the gun and whether Juanita negligently had entrusted the gun to Timothy because she knew or should have known that providing a gun to him posed an unreasonable risk of harm to others.  Tissicino and Nielson claim Juanita's duty arises under Restatement (Second) § 390, which states:

> One who supplies directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for the physical harm resulting to them.

¶8        At the outset, we disagree that plaintiffs were required to establish Juanita owned the gun in order to maintain their claim against her for negligent entrustment pursuant to § 390.  Although Arizona courts have not yet squarely addressed this issue, there are cases that suggest a defendant's ownership of a chattel is not a prerequisite to liability for negligent entrustment.  *See State Farm Auto Ins. Co. v. Dressler*, 153 Ariz. 527, 529-30, 738 P.2d 1134, 1136-37 (App. 1987) ("[N]egligent entrustment liability is theoretically possible in a case where the defendant neither owned, maintained nor used the vehicle in question . . . ."); *Lumbermens Mut. Cas. Co. v. Kosies*, 124 Ariz. 136, 138, 602 P.2d 517, 519 (App. 1979) ("In order to prove negligent entrustment it is necessary for the plaintiff to show . . . that the defendant owned *or controlled* the motor vehicle concerned . . . .") (emphasis added).

**¶9**        The plain language of § 390 does not make ownership a material element. Section 390 is "a special application of the rule stated in [Restatement (Second) of Torts] § 308 [(1965)]." Restatement § 390 cmt. b. Section 308 provides as follows:

> It is negligence to permit a third person to use a thing or to engage in an activity which is *under the control* of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

(Emphasis added.) In defining control, comment a to § 308 states that

> [t]he words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.

**¶10**        A majority of other jurisdictions have defined right to control the chattel as the essential element of a negligent entrustment claim, rather than ownership. *See, e.g., Mills v. Crone*, 973 S.W.2d 828, 831 (Ark. Ct. App. 1998) ("According to the *Restatement*, one is not liable for negligent entrustment of a thing if he has no right to control its use."); *Zedella v. Gibson*, 650 N.E.2d 1000, 1003 (Ill. 1995) (defining entrustment under the restatement "with reference to the right of control of the subject property"); *Green v. Harris*, 70 P.3d 866, 871 (Okla. 2003) (acknowledging that, although negligent entrustment usually involves ownership, possession and control is actual requirement).

6

**¶11** We conclude that a genuine issue of material fact exists as to whether Juanita had the right to control the gun. As noted, in assessing whether genuine issues of material fact exist, we view the facts and all reasonable inferences therefrom in the light most favorable to the party that opposed summary judgment. *Wilson v. U.S. Elevator Corp.*, 193 Ariz. 251, ¶ 2, 972 P.2d 235, 236-37 (App. 1998). Summary judgment is only proper if the facts produced in support of the claim have so little probative value that a reasonable jury could not agree with the conclusion advanced by the proponent. *Id*. ¶ 5.

**¶12** The parties do not dispute that Don, Juanita's husband, had owned the gun and had given it to Timothy. Nor do they dispute that Don reasserted control of the gun after Timothy's brother had used it to commit a crime and after Don had stated to Timothy, "I am going to hang onto it because you let your brother go into your room and take it." Moreover, deposition testimony established that Don had possessed the weapon and had kept it for protection for nearly twenty years without any effort by Timothy to claim it or otherwise possess it. From these facts, a jury could infer that Timothy had abandoned his ownership interest in it. *See* 1 Am. Jur. 2d *Abandoned, Lost and Unclaimed Property* § 3 (2005) ("[T]he term 'abandonment,' as applied to personal property . . . means the act of voluntarily and intentionally relinquishing a known right . . . ."); *see also Benjamin v. Lindner Aviation, Inc.,* 534 N.W.2d 400, 406 (Iowa 1995) ("Abandoned property belongs

to the finder of the property against all others, including the former owner.").[1]  Even assuming Timothy still technically owned the gun after Don had reasserted control over it, an owner forfeits the legal right to regain possession and control of personal property from one who adversely controls it after the passage of two years.  *See* A.R.S. § 12-542(5) (setting forth two-year limitations period for bringing conversion action to recover possession of personal property).

¶13        Juanita maintains that, after Don originally gave the gun to Timothy, he merely continued to hold it for Timothy during the twenty years, thus creating a bailor/bailee relationship wherein Timothy continued to possess a superior right to control the property. *See Nava v. Truly Nolen Exterminating of Houston, Inc.*, 140 Ariz. 497, 500, 683 P.2d 296, 299 (App. 1984) ("Where personal property is delivered . . . in trust for a specific purpose, with the . . . implied agreement that the property will be returned or accounted for when the purpose is accomplished, the transaction constitutes a bailment.").  But Don's reassertion of control over the gun, his statement implying that he was the arbiter of who

---

[1]Juanita maintains that we should not address the common law doctrine of abandonment in evaluating the question of ownership and control because Tissicino and Nielson never raised that specific legal doctrine in their opposition to summary judgment. However, they have squarely challenged, both on appeal and below, the trial court's conclusion that Timothy owned the gun and, in so doing, have emphasized Don's prolonged possession of the gun without objection by Timothy.  Juanita further complains that she was not provided an opportunity to address the law of abandonment in the context of this case because we ordered no supplemental briefing on the topic.  Yet, Juanita has declined to specify how we have erred in applying the principles of abandonment, although she could have done so in her otherwise comprehensive motion for reconsideration.

8

could possess it, and Timothy's arguable acquiescence for twenty years, all contradict Juanita's theory that Don was holding the gun in trust for Timothy's use. Therefore, a jury reasonably could conclude that Timothy had abandoned any ownership interest he may have had in the gun, that Don was not merely holding it for him as a bailee, and that Don and Timothy both believed that Don had the legal right to control it.

¶14 Finally, a jury reasonably could conclude that Juanita's continued possession of the gun after her husband had moved to a nursing home, her act of hiding it in a typewriter case, and her ultimate decision to give it to Timothy for reasons of her own all indicated that the gun had been under her control when she had entrusted it to Timothy. Thus, the court erred by granting summary judgment in favor of Juanita on the ground that she was not the "owner" and therefore had no duty to refrain from providing the firearm to Timothy. Rather, there existed a material issue of fact as to whether Juanita had the right to control the gun to the extent she had the power to possess it, relocate it, and withhold her consent to its use by Timothy.

¶15 The trial court also found that under "no reasonable interpretation of the facts of this case" could a jury conclude Juanita "knew or should have known that providing the firearm to her adult son presented an unreasonable risk of harm to Zachary." The trial court further observed that to find otherwise,

> the Court would have to find that the law requires the owner of a firearm to thoroughly examine and consider the constellation of characteristics of an apparently competent person which may potentially present an unreasonable risk of harm to others.

9

> While this may be a salutary policy, it is not yet the policy or the law of the state of Arizona.

We do not agree with the trial court that the "salutary policy" is not yet the law in Arizona. Section 390 of the Restatement (Second) specifically requires the entrustor of a chattel to consider the characteristics of the entrustee, such as "youth, inexperience, or otherwise" in evaluating whether the latter might use the chattel in a manner that would pose "an unreasonable risk of physical harm to himself and others." *See Martin v. Schroeder*, 209 Ariz. 531, n.1, 105 P.3d 577, 579 n.1 (App. 2005) (equating § 390 with negligent entrustment in Arizona).

¶16 Timothy's "constellation of characteristics"—alcohol abuse, mental impairment including cognitive dysfunction, and a prior accident with a gun—and Juanita's undisputed awareness of them, together created a genuine issue of material fact on the question of whether Juanita should have known that an unreasonable risk of physical harm would be created if she gave Timothy the gun. *See id.* ¶ 19 (suggesting that knowledge of son's contemporaneous marijuana use at the time parents bought him a gun would be a jury question under § 390).

¶17 Juanita also argues that any negligence by her in entrusting the gun to Timothy was not the proximate cause of Zachary's death because Timothy's criminal act in recklessly shooting Zachary constituted a superseding cause. But, a superseding cause relieves an original tortfeasor of liability only when "an intervening act of another was unforeseeable by a reasonable person in the position of the original actor *and* when, looking backward,

after the event, the intervening act appears extraordinary." *Ontiveros v. Borak*, 136 Ariz. 500, 506, 667 P.2d 200, 206 (1983). Moreover, the issue of causation is ordinarily a question of fact for the jury to decide. *Id*. at 508, 666 P.2d at 208. Viewing the evidence in the light most favorable to Tissicino and Nielson, a jury could reasonably conclude that Timothy's accidental shooting of Zachary was foreseeable to Juanita, given her awareness that he was mentally impaired, abused alcohol, and had shot himself accidentally on a previous occasion. Thus, Tissicino and Nielson raised a question of material fact on whether Juanita's negligent entrustment of the gun to Timothy was a proximate cause of Zachary's death.

¶18    Accordingly, we reverse the trial court's order granting summary judgment in favor of Juanita Peterson and remand for proceedings consistent with this decision.


_____
PETER J. ECKERSTROM, Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge