**Steven WITTRIEN, Appellant**

v.

**Gary and Brenda BURKHOLDER, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 18, 2008.
Filed Feb. 6, 2009.

Jerry Lyons, Philadelphia, for appellant.

Teresa F. Sachs, Philadelphia, for appellees.

BEFORE: LALLY–GREEN, GANTMAN and ALLEN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant, Steven Wittrien, appeals from the February 8, 2008 judgment entered against him in his negligence action against Appellees, Gary and Brenda Burkholder. We affirm.

¶ 2 The trial court's opinion sets forth the following facts:

> This matter stems from a shooting that occurred on February 20, 2005. Gary M. Burkholder, the adult son of the Defendants, shot Steven Wittrien, Plaintiff, with a shotgun wounding him in the face, hand and chest. Plaintiff filed a two count complaint against the Defendants on May 4, 2006 alleging negligence and gross negligence caused by the acts of their son.
>
> . . .
>
> The relevant facts for disposition of this motion are as follows. On February 20, 2005, Gary M. Burkholder was twenty (20) years old having been born on December 21, 1984. He was living at 525 Gristmill Road, Martindale, PA, his parents' home. He was the owner of a 12 gauge shotgun which he legally purchased from the Sportsmen's Shop in New Holland, PA on February 11, 2003 when he was eighteen (18) years old. This was the gun that was used in the shooting.
>
> On the day in question in addition to the Defendants and Gary M. Burkholder, also living in the residence were Defendants' daughter, Jennifer Wittrien and her and Plaintiff's daughter Brittany. Plaintiff went to this residence to pick up his daughter because he received notice from Jennifer that Gary M. Burkholder was drinking and in a violent state. When Plaintiff arrived he was shot by Gary M. Burkholder.
>
> The gun in question was kept by Gary M. Burkholder in a locked cabinet in his room. Prior to the incident, on Mother's Day 2004, (May 9, 2004) Defendant Gary L. Burkholder took the shotgun from his son and hid it because he was threatening suicide. Sometime between

five (5) and seven (7) months prior to the incident he was told where the gun was and he again took possession of it.

The Court will also assume as true the factual background in Plaintiff's brief which is as follows:

On February 20, 2005, Defendants' son shot Plaintiff Steven Wittrien (along with a New Holland police officer) on their property at 525 Gristmill Road, Martindale, PA 17522–9300. Defendants knew their 20–year–old son, who lived with them, had violent propensities; became violent when he drank; and had a history of violent behavior. Defendants had confiscated and hid their son's shotgun after an incident on Mother's Day, 2004. Defendant Mr. Burkholder feared for his safety for two (2) years prior to the shooting of February 20, 2005, and realized his son "shouldn't have had a shotgun." Defendant Mr. Burkholder described his son, as a *"ticking time bomb"* and knew of his son's: ongoing communications with hate groups; prior conviction for assault stemming from racial intimidation; drinking problem; and violent propensities. In her statement to police, Defendant Mrs. Burkholder described how:

[H]e's into white supremacy now. I think he's been into this for about 6 months. He got his computer in July and things started to go downhill after that.... He had to attend Anger Management and pay a fine. He's had an anger problem since about 11th grade on.

Defendant Mr. Burkholder continued:

He's been listening to pretty bad tapes, killing black people, terrible things. He was also arrested on November 2nd for an assault on a black man at their work. He was in jail for ten days after that. I burned the tapes and things he had on white supremacy.

Trial Court Opinion, 2/8/08, at 1–3 (record citations omitted).

¶ 3 Appellees filed their motion for summary judgment on October 17, 2007. The trial court granted the motion and entered judgment in Appellees' favor on February 8, 2008. This timely appeal followed.

¶ 4 Appellant raises the following issues for our review:

Did the trial court err in granting summary judgment, and/or misapply Restatement (Second) of Torts, § 308, Permitting Improper Persons To Use Things Or Engage In Activities, when it:

A. Narrowly limited the time frame of "control" of the shotgun to the moment of the shooting and failed to consider the Defendants' taking control of the shotgun and then returning it to the shooter simply upon his asking for it; and

Failed to consider foreseeability; the Defendants' knowledge of the danger and the likelihood of an unreasonable risk of harm?

Appellant's Brief at 4.[1]

¶ 5 We review a grant of summary judgment according to the following standard:

Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party

---

1. Appellant included this argument in a timely concise statement of errors complained of

on appeal. Pa.R.A.P.1925(b).

and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party. Thus, summary judgment is proper only when the uncontraverted allegations in the pleadings, depositions, answers to interrogatories, admissions of record, and submitted affidavits demonstrate that no genuine issue of material fact exists, and that the moving party is entitled to judgment as a matter of law. In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment.

[O]n appeal from a grant of summary judgment, we must examine the record in a light most favorable to the non-moving party. With regard to questions of law, an appellate court's scope of review is plenary. The Superior Court will reverse a grant of summary judgment only if the trial court has committed an error of law or abused its discretion. Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration. *Wright v. Allied Signal, Inc.,* 2008 PA Super 289, at ¶ 6.

 ¶ 6 Appellant alleged in his complaint that Appellees negligently allowed their adult son, Gary M. Burkholder ("Gary") access to the gun he used to shoot Appellant. In any negligence case, the plaintiff must prove duty, breach, causation and damages. *T.A. v. Allen,* 447 Pa.Super. 302, 669 A.2d 360, 362 (1995) *(en banc), appeal denied,* 544 Pa. 661, 676 A.2d 1201 (1996). The trial court found that Appellees did not have control of the gun. This argument turns on proper application of Restatement (Second) of Torts, § 308. Section 308 provides:

**§ 308 Permitting Improper Persons to Use Things or Engage in Activities**

It is negligence to permit a third person **to use a thing** or to engage in an activity **which is under the control of the actor,** if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

**COMMENTS AND ILLUSTRATIONS: Comment:**

a. The words "under the control of the actor" are used to indicate that the third person is entitled to possess or use the thing or engage in the activity **only by the consent of the actor,** and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity.

Restatement (Second) of Torts, § 308 (emphasis added).

¶ 7 Pennsylvania courts have expressly adopted § 308 and applied it on several occasions. In *Frey v. Smith,* 454 Pa.Super. 242, 685 A.2d 169 (1996), *appeal denied,* 549 Pa. 701, 700 A.2d 441 (1997), we reversed the dismissal of the plaintiff's negligent supervision case where the complaint alleged that the parents allowed their minor son unsupervised use of an air gun. Likewise, in *Johnson v. Johnson,* 410 Pa.Super. 631, 600 A.2d 965, 971 (1991), we concluded that a defendant father could be subject to liability under § 308 because he provided his minor son with the gun the son had used to fire the fatal shot in a hunting accident.[2] Finally, in *Mendola v. Sambol,* 166 Pa.Super. 351, 71 A.2d 827 (1950), we concluded that the defendant father was subject to liability

---

**2.** Contrary to Appellant's assertion in his brief, the trial court did not dismiss the father

from the suit.

under § 308 where he left a gun sitting out and his 11-year-old son used it in the shooting of another young child. We noted that "it is negligent to place loaded firearms or poisons within reach of young children or feebleminded adults." *Id.* at 829. Since each of the foregoing cases involved a minor child who gained possession of a gun, the weapon in question was within the control of the defendant parent.

¶ 8 Appellant cites only one case, an Arizona case, which involved negligent entrustment of a gun to a defendant's adult son. In *Tissicino v. Peterson*, 211 Ariz. 416, 121 P.3d 1286 (2005), the father originally gave a gun to his son but then took it back. After the father moved to a nursing home, the defendant mother maintained possession of the gun and hid it in a typewriter case. *Id.* at 1288. The defendant mother eventually gave the gun back to the son because she did not want to have it around. *Id.* Shortly thereafter, the son accidentally shot the victim. The record in *Tissicino* revealed that the son had a below average intelligence quotient, a drinking problem, brain damage, and cognitive disorder. *Id.* at 1288. The Arizona Court noted that the right to control the chattel in question, rather than legal ownership, is necessary for a negligent entrustment claim under § 308. *Id.* at 1289. The Court concluded that the plaintiff raised a triable issue of fact as to whether mother had the right to control the gun.[3]

 ¶ 9 In the instant matter, Gary, the adult son, legally purchased the gun in question when he was 18. Gary was in lawful and exclusive possession of the gun from the time of its purchase until the time of the shooting, with one exception. Appellees confiscated the gun nine months before the shooting for a short period of time after Gary threatened suicide. Appellees returned the gun to Gary, at Gary's request, approximately five to seven months prior to the shooting. Thus, the record fails to reflect evidence that Appellees had the right to control the gun at the date of the shooting. Appellees' temporary confiscation of the gun in an emergency situation fails to support a conclusion that Gary had the right to use the gun "only by the consent" of Appellees. *See* Restatement (Second) of Torts, § 308, comment a. Furthermore, though the record reflects evidence of Appellant's violent propensities and bigotry, there is no evidence of any cognitive disability that would render him a "feebleminded adult" whose mental capacity is commensurate with that of a young child. *Mendola.* Appellant's failure to establish that Appellees had the right to control the firearm that was in the possession of their adult son is fatal to his argument on appeal.[4] Accordingly, we affirm the summary judgment in favor of Appellees.

¶ 10 Judgment affirmed.

---

**3.** The facts of *Tissicino* reflected that, for a long period of time prior to the shooting, parents maintained both legal ownership of and possession and control of the gun. *Tissicino* also included facts from which one could argue that the mother negligently allowed possession of a gun by a "feebleminded adult." *Mendola.*

**4.** We note that Appellant does not argue that Appellees owed a duty to him pursuant to

§ 315 of the Restatement, which governs special relationships among certain parties. Also, this case does not implicate § 316, which governs parents' liability for the torts of their minor children. *See J.H. v. Pellak,* 764 A.2d 64, 66 (Pa.Super.2000). Indeed, the existence of § 316, which expressly limits a parent's liability to certain torts involving **minor** children, further undermines Appellant's theory of this case.