# Smith v. Smith

C.P. of Northampton County, No. C-48-CV-2011-11875

*Michael A. Snover*, for plaintiff.
*Christopher Parrish* and *Jennifer Le Van*, for defendant.

KOURY, *J.*, October 11, 2013—

OPINION OF THE COURT

This matter is before the court on plaintiff Christine Smith's ("Christine" or "Christine Smith") "Motion for Partial Summary Judgment on Tort Status." In order to rule upon Christine Smith's motion, the court must decide whether she was a resident relative in her mother's household at the time of the accident at issue in the case and was therefore an insured under her mother's automobile insurance policy and bound by her mother's election of the limited tort option in the policy. For the reasons set forth below, we hold that Christine Smith was not a resident relative of her mother's household at the time of the accident and that her motion for summary

judgment is granted.

## BACKGROUND

### I. Christine Smith's Complaint

This action arises out of a car accident that occurred on December 28, 2009 on Route 191 in Stroud Township, Monroe County, Pennsylvania. *See* compl. ¶ 3, *Smith v. Smith*, C-48-CV-2011-11875 (C.P. Northampton Co. Apr. 4, 2012) ("compl."). Christine Smith was a passenger in the car. *See id.* The car was driven by Christine's sister, Barbara Smith ("Barbara" or "Barbara Smith"), and owned by defendant June Smith ("June" or "June" Smith"), mother of Christine and Barbara Smith. *See id.* As a result of the accident, Barbara Smith died. *See id.* ¶ 2. Christine Smith has asserted claims against her mother, June Smith, individually and as administrator of the estate of Barbara Smith, for personal injuries that Christine Smith allegedly sustained in the accident. *See id.* ¶¶ 6-18.

The parties agree that the car involved in the accident was insured by June Smith under a motor vehicle insurance policy issued by State Farm Mutual Automobile Insurance Company and that June Smith had elected the limited tort alternative under the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1705(d), which limits an insured's ability to recover for noneconomic loss, including pain and suffering. *See* plaintiff's brief in support of motion for partial summary judgment on tort status at 2, *Smith v. Smith*, C-48-CV-2011-11875 (C.P. Northampton Co. May 17, 2013) ("Pl. Br."); defendant's brief in opposition to plaintiff's motion for partial summary judgment on tort status at 5, *Smith v. Smith*, C-48-CV-2011-11875 (C.P. Northampton Co. Aug. 30, 2013) ("def. br."). As an affirmative defense,

June Smith has asserted that Christine Smith's claims are barred or reduced, because she was allegedly a resident relative in her mother's household at the time of the accident and was therefore an insured under her mother's policy and bound by her mother's election of the limited tort alternative. *See* new matter ¶ 4; def. br. at 4-5.

II. Christine Smith's Residence

Prior to December 2009, Christine and Barbara Smith lived at their mother's house at 3 Greenwood Way in East Bangor, Pennsylvania. *See* transcript of deposition of Christine Smith at 21-22, 46, *Smith v. Smith*, C-48-CV-2011-11875 (C.P. Northampton Co. Feb. 14, 2013) ("Christine Smith dep."); transcript of deposition of June Smith at 5-6, *Smith v. Smith*, C-48-CV-2011-11875 (C.P. Northampton Co. Feb. 14, 2013) ("June Smith dep."). In early December 2009, Christine had an argument with her mother. *See* Christine Smith dep. at 125; June Smith dep. at 6-7. June Smith told Christine Smith that if she wanted to live in her house, she had to follow her rules. *See* June Smith dep. at 7. At that time, Christine was eighteen years old. *See* Christine Smith dep. at 7. Christine told her mother that she wanted to be independent. *See* June Smith dep. at 8-9. Christine moved out of her mother's house and moved in with her friend Katie Geary, who lived in a basement apartment in her parents' home with a separate entrance. *See* Christine Smith dep. at 21, 54, 124. Although Christine left some of her personal possessions at her mother's home, she moved "quite a few clothes" to Katie's house. *See* June Smith dep. at 32.

Christine, Barbara, and Katie decided they wanted to live together in a place of their own and began looking for an apartment. *See* Christine Smith dep. at 129; June Smith dep. at 7. Barbara was a year and a half older than

Christine and worked at Wal-Mart. *See* Christine Smith dep. at 42. Katie worked at the Red Robin restaurant. *See id.* at 53. At that time, Christine was not working. *See id.* at 14, 45-46. However, she began looking for a job so that she would be able to support herself and pay her share of the rent for an apartment. *See id.* at 125.

Christine testified that before December 2009, she had never before "moved out" of her mother's house. *See id.* at 121. She had occasionally spent the night away from home, but on those occasions, she had returned after a day or two. *See id.* at 23-24, 122; June Smith dep. at 6.

June Smith testified that after Christine moved out of her house in December 2009, she believed that this move might be different from previous occasions when Christine had stayed with friends overnight. *See* June Smith dep. at 7. On this occasion, unlike the others, even after the argument ended, Christine did not return home. *See id.* June Smith dep. at 8. She remained away longer than she had ever been away before. *See id.* at 6. She returned to her mother's house periodically to pick up her mail but did not move back in. *See id.* at 8. Although June Smith told her daughters that they were "nuts" for planning to live on their own, they persisted in their search for an apartment. *See id.* at 7. June Smith testified that she was "hoping" that Christine would move back to her house. *See id.* at 33. However, she said there was no particular time when she expected Christine to return home, "[e]specially when she didn't come home for Christmas." *Id.* at 6.

Christine testified that when she first moved to Katie's house, she did not intend to live there permanently but intended to move back to her mother's house at some point. *See* Christine Smith dep. at 23-24. However, she testified that there was no specific date when she planned

on returning to her mother's house. *See id.* at 122. She said she never filled out a form to change the address on her driver's license and never went to the post office to change her mailing address. *See id.* at 127. She said, "I wasn't going to stay at Katie's. . . . I was going to go back to my mom's or get an apartment." *Id.* at 128-29. On December 29, 2009, after she left the hospital, Christine moved back to her mother's house. *See id.* at 22, 49.

## DISCUSSION

### I. Summary Judgment Standard

The court may enter summary judgment on a claim or defense when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Pa.R.C.P. 1035.2.

> After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law.
>
> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

*Id.*; *accord J.P. Morgan Chase Bank, N.A. v. Murray*, 63 A.3d 1258, 1261-62 (Pa. Super. 2013). The court views

the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *See id.*

"The moving party bears the burden of proving that no genuine issues of material fact exist." *Wittrien v. Burkholder*, 965 A.2d 1229, 1232 (Pa. Super. 2009) (quoting *Wright v. Allied Signal, Inc.*, 963 A.2d 511, 514 (Pa. Super. 2008)). However, where the non-moving party bears the burden of proof on an issue at trial, in order to defeat summary judgment, the non-moving party must adduce sufficient evidence to establish a genuine issue of material fact as to that issue. *See J.P. Morgan*, 63 A.3d at 1260.

> Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

*Id.*

A party asserting an affirmative defense bears the burden of proof on that defense. *See Speight v. Mahalis*, 2008 WL 6581343, at *58 (C.P. Philadelphia Co. May 28, 2008) ("Generally, a defendant has the burden of proof on affirmative defenses and counterclaims. Because the Estate did not present evidence of the insurance, it failed to satisfy its affirmative burden that recovery was restricted to a limited tort election on the applicable automobile policy.").

Here, June Smith has asserted the affirmative defense that Christine Smith is bound by the limited tort option in June Smith's insurance policy and is therefore precluded from seeking full tort relief. Thus, June Smith will bear the burden of proof at trial on that affirmative defense. Accordingly, the court may grant summary judgment against June Smith on this affirmative defense if she has failed to adduce evidence of facts "which would require the issue to be submitted to a jury." Pa.R.C.P. 1035.2(2). The court must now determine whether June Smith has established the existence of a genuine issue of material fact as to whether Christine Smith is bound by the limited tort election in June Smith's policy.

II. The Right to Pursue Full Tort Relief

The interpretation of the MVFRL is a question of law for the court. *See L.S. v. David Eschbach, Jr., Inc.*, 874 A.2d 1150, 1154 (Pa. 2005). When there is a dispute as to whether the full tort or limited tort alternative applies, doubts are resolved in favor of the full tort alternative. *See id.* at 1156-57. In addition, "[t]he interpretation of an insurance contract regarding the existence or non-existence of coverage is 'generally performed by the Court.'" *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007) (quoting *Minnesota Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)).

"The tort option elected by a named insured shall apply to all insureds under the private passenger motor vehicle policy who are not named insureds under another private passenger motor vehicle policy." MVFRL, 75 Pa.C.S.A. § 1705(b)(2). Because June Smith was the "named insured" on her own policy, her election of the limited tort option in her policy applies to all "insureds" under that policy who are not "named insureds" under another policy. *See id.*

The parties agree that at the time of the accident, Christine Smith did not own a vehicle and was not a "named insured" under any policy. *See* pl. br. at 8-9. Thus, if Christine Smith was an "insured" under her mother's policy, she is bound by her mother's election of the limited tort option. *See* MVFRL, 75 Pa.C.S.A. § 1705(b)(2). Conversely, if Christine Smith was not an "insured" under her mother's policy, then she is not bound by her mother's election of the limited tort option and is entitled to seek full tort relief. *See* MVFRL, 75 Pa.C.S.A. § 1705(b)(3).

> An individual who is not an owner of a currently registered private passenger motor vehicle and who is not a named insured or insured under any private passenger motor vehicle policy shall not be precluded from maintaining an action for noneconomic loss or economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law.

*Id.*

The court must look to the definition of "insured" to determine whether Christine Smith was an "insured" under her mother's policy.

The MVFRL provides the following definition of "insured":

> "Insured" — Any individual residing in the household of the named insured who is:
>
> (1) a spouse or other relative of the named insured; or
>
> (2) a minor in the custody of either the named insured or relative of the named insured.

MVFRL § 1705(f). Christine Smith was a relative of June

Smith, the named insured. However, in order to be deemed an "insured," and thus bound by the limited tort selection in her mother's policy, Christine Smith must have been "residing in the household" of her mother. *See id.* The MVFRL does not provide a definition for "residing" or "resident." However, June Smith's policy defines "resident relative" as a relative who "resides primarily" with the named insured. *See* def. br. at 5. Because the MVFRL provides no statutory definition of "resident," the court must apply the common law definition of resident as applied to interpreting that term in an automobile insurance policy. As more fully set forth below, the court concludes that June Smith has failed to adduce evidence sufficient to demonstrate the existence of a genuine issue of material fact as to whether Christine Smith resided in the household of June Smith at the time of the accident and was therefore bound by the limited tort election in her mother's policy.

III. Determination of Residency

A. Relevant Time

The common-law definition of "resident," as the word is used in automobile insurance contracts, depends on where the person physically resides at the time of the accident, not where the person has resided in the past or intends to reside in the future. *See Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, 545 A.2d 343, 346 (Pa. Super. 1988).

> "The Courts of this Commonwealth have historically recognized the classical definitions of the words domicile and residence. Domicile being that place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. Residence

being a factual place of abode. Living in a particular place, requiring only physical presence."

*Id.* (quoting *Krager v. Foremost Ins. Co.*, 450 A.2d 736, 737-38 (Pa. Super. 1982)) (insurance policy covering "residents" of the named insured's household did not cover his daughter, although she had lived with her father in the past and intended to move back in with him in the immediate future, because, at the time of the accident, she had lived with her mother for the previous ten months and had spent only occasional nights during that time at her father's house); *accord St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.3d 1428, 1431-32 (3d Cir. 1991) (insurance policy covering relatives "living with" the named insured did not cover his adult son, even though the son had lived with his parents until one month before the accident and still considered their home to be "his home," because, at the time of the accident, the son had moved into his own apartment and was no longer living at his parents' home). The *St. Paul* court stated, "While it is true that the insurance policy does not explicitly state that a party must live with the insured at the time of the accident, we cannot interpret it to mean otherwise." 935 F.2d at 1433.[1]

Based on these authorities, the court must determine Christine Smith's residency based on where she was physically residing at the time of her accident. The court may not consider the facts that she had lived in her mother's home for many years of her life or that she believed she might move back in with her mother at some time in the future.[2]

---

1. Although this court is not bound by federal court opinions interpreting Pennsylvania law, we may consider federal cases as persuasive authority. *See Cambria-Stoltz Enter. v. TNT Invs.*, 747 A.2d 947, 952 (Pa. Super. 2000).

2. June Smith relies on a case in which the court held that a husband

B. Nature of Contact with Named Insured's Household

Under the common law definition of residency, a person is a "resident" of a named insured's household only if the person has spent a significant amount of time at the named insured's home on a regular basis during the time leading up to the accident; occasional and "sporadic" visits are insufficient to establish residency. *See Amica Mut. Ins. Co. v. Donegal Mut. Ins. Co.*, 545 A.2d 343, 345-49 (Pa. Super. 1988) (insurance policy covering "residents" of the named insured's household did not cover his daughter, because she had lived with her mother for ten months prior to the accident and, during that time, had spent only occasional nights at her father's home); *accord St. Paul Fire & Marine Ins. Co. v. Lewis*, 935 F.3d 1428, 1435 (3d Cir. 1991) (insurance policy covering relatives "living with" the named insured did not cover his adult son, because the son had moved into his own apartment one month before the accident and, during that time, had not slept at his parents' home for a significant amount of time or on a regular basis).[3]

---

was a resident of his estranged wife's home even though he had moved out of the home six weeks prior to the accident. *See* def. br. at 6 (citing *State Farm Automobile Ins. Co. v. Hill*, 151 P.L.J. 24 (C.P. Allegheny Co. 2003)). However, the *Hill* case is not binding on this court and is inapposite to the facts presented here. June Smith acknowledges that the *Hill* court determined that the husband, who presumably shared ownership of the home, was in the process of reconciling with his wife and was remaining absent only for the purpose of treating his depression. *See id.* at 7. By contrast, Christine Smith did not leave her mother's home for a specific purpose but moved out. We note that the *St. Paul* court held that cases involving married couples turn on special facts intrinsic to the marital relationship and therefore do not apply to other types of relatives. *See* 935 F.2d at 1432 ("Whether or not two individuals live together as husband and wife focuses on factors that are completely irrelevant to determining whether other relatives live together.").

3. June Smith argues that because the policy defines "resident relative" as a person "residing primarily" with the named insured, the word "primarily" is a "word of refinement" that expands the definition of residency from the time of the accident to the entire course of Christine's life

542

Here, it is undisputed that Christine Smith moved out of her mother's home one month before the accident and moved in with her friend Katie. There was no evidence that Christine was merely visiting Katie. Both parties testified that Christine moved out because she had argued with her mother and that she was looking for a job and an apartment so that she could live on her own. It is undisputed that after Christine moved out, she did not sleep at her mother's house again before her accident. The evidence conclusively established that during the period leading up to the accident, Christine was living with Katie and not sleeping at her mother's home at all, let alone for a significant amount of time or on a regular basis. Thus, based on the authorities cited above, Christine was not a resident of her mother's home for purposes of her mother's automobile insurance policy.

---

and therefore compels the court to view Christine's mother's home as her "primary" home, because she had spent more time there and possibly intended to move back there. *See* def. br. at 10-11. There is no legal or factual basis for this expansive reading of the definition. June Smith has cited no authority in support of such a reading, and the common understanding of the words is consistent with the cases cited above. Christine Smith was "residing primarily" at Katie's house at the time of the accident, because she was sleeping at Katie's house on a daily basis and not sleeping at her mother's house for a significant amount of time or on a regular basis. The cases cited by June Smith merely suggest only that if the policy definition includes a word of refinement such as "permanent" or "legal," a court might determine that a military person or college student who was living far away but deemed to be a "permanent" or "legal" resident of his or her parent's home might still be deemed a resident for purposes of the policy. *See Amica*, 545 A.2d at 346-47; St. Paul, 935 F.2d at 1432. No such facts are present here. In addition, to the extent that June Smith's interpretation broadens the policy definition beyond the common-law definition of residence presupposed by the MVFRL and thereby restricts the full tort coverage rights provided in the MVFRL, it must be deemed contrary to the statute and unenforceable. *See Prudential Prop. & Cas. Inc. Co. v. Colbert*, 813 A.2d 747, 751 (Pa. 2002) (where policy purported to narrow the definition of "insured" by defining "resident relative" to include only relatives driving vehicles insured under the policy, the contractual definition impermissibly conflicted with the MVFRL and was unenforceable).

## C. Less Personal Contacts as Basis for Residence

June Smith argues that a finding of residency could be based on Christine's less personal contacts with her mother's home after she moved out, specifically, the facts that (1) she kept some personal belongings in the bedroom at her mother's home where she had previously slept; (2) she periodically stopped by her mother's house to pick up her mail; (3) she did not change her mailing address with the Post Office; (4) she did not change the address appearing on her driver's license; and (5) her mother's address was listed as her address in the hospital records documenting her admission to the emergency room on the night of the accident. *See* def. br. at 9-12. We disagree.

The cases cited above expressly held that contacts such as these are insufficient to confer residency status. *See Amica*, 545 A.2d at 345 (daughter was not a resident of her father's home, even though she received mail there and kept personal possessions there, including one or two closets full of clothes, approximately forty pairs of shoes, cosmetics, books, stuffed animals, tennis equipment, and a pet rabbit); *accord St. Paul*, 935 F.2d at 1430 (son was not a resident of his parents' home, even though he regularly visited their home to eat meals and celebrate the holidays, kept a room and personal belongings there, received mail there, and listed his parents' address as his address on his driver's license, pilot's license, banking records, tax returns, and the hospital admission forms on the night of the accident). The *St. Paul* court stated, "[The named insured's son] did not sleep at his parents' or take his meals there with any regularity. The fact that [he] stored personal possessions at his parents' condominium and used their address for certain purposes does not replace personal contact." 935 F.2d at 1433. The *Amica*

court stated: "The fact that [the named insured's daughter] kept numerous personal items at her father's house does not compel a conclusion that she resided there as a matter of physical fact. Rather, it lends support to the conclusion that she *had* lived there and that she *intended* to live there again.") (emphasis added)).

The above-cited authorities make clear that continuing contacts such as those present here are insufficient, as a matter of law, to support a finding of residency. Thus, the court holds that June Smith has failed to adduce facts sufficient to demonstrate the existence of a genuine issue of material fact as to whether Christine was a resident of her mother's home at the time of the accident. Because such a finding is essential to June Smith's affirmative defense that Christine Smith is bound by her mother's election of the limited tort option in her insurance policy, Christine Smith is entitled to judgment as a matter of law on the affirmative defense.

Wherefore, we enter the following:

## ORDER OF COURT

And now, this 11th day of October, 2013, having considered plaintiff Christine Smith's "Motion for Partial Summary Judgment on Tort Status," the response thereto of defendant June Smith, and the briefs and arguments thereon, it is hereby ordered that plaintiff's motion is granted. It is further decreed that Christine Smith is not an insured under June Smith's automobile insurance policy and therefore is not bound by June Smith's election of the limited tort option in the policy.