**Lasavage v. Smith**

*David W. Saba,* for plaintiff.

*Eileen Kelly Keefe*, for defendants Smith and Scranton Heart Institute, P.C.

*Michael P. Perry*, for defendant Community Medical Center.

NEALON, *J.*, March 31, 2011—Defendants Stafford M. Smith, M.D. ("Dr. Smith") and Scranton Heart Institute, P.C. ("the Institute") have filed preliminary objections to the allegations of "recklessness," "outrageous, wanton and grossly indifferent conduct" and "reckless indifference to the rights of Plaintiff's decedent" contained in paragraphs 71-73, 74(a) and 76 of the complaint that has been filed by plaintiff John Lasavage, executor of the estate of John S. Lasavage ("Lasavage"). Dr. Smith and the institute assert that Lasavage's allegations are insufficient as a matter of law to support a claim of reckless conduct or a putative

right to punitive damages.[1] Following the completion of oral argument on March 30, 2011, the preliminary objections were submitted for a decision.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint, *Feingold v. Hendrzak*, 2011 WL 590294 at *2 (Pa. Super. 2011), and "whether the pleading would permit recovery if ultimately proven." *Foster v. UPMC South Side Hospital*, 2 A.3d 655, 662 (Pa. Super. 2010), app. denied, 12 A.3d 371 (Pa. 2010). When considering preliminary objections, all material facts set forth in the challenged pleading are admitted as true, as well as inferences reasonably deducible therefrom. *Haun v. Community Health Systems*, 2011 WL 166324 at *3 (Pa. Super. 2011). Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases that are clear and free from doubt. *Feingold, supra*; *Foster, supra*. "To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that

---

1. A decedent's estate may recover punitive damages under the Survival Act, 42 Pa. C.S.A. §8302, provided that the decedent could have recovered punitive damages had [s]he lived. *Harvey v. Hassinger*, 461 A.2d 814, 816 (Pa. Super. 1983); *Wagner v. Onofrey*, 2006 WL 3704801 at *3 n. 3 (Lacka. Co. 2006). Although Lasavage does not specifically reference or demand "punitive damages" in his complaint, his cause of action under the Survival Act avers that Lasavage "claims on behalf of the estate all damages recoverable by law including, but not limited to, the physical pain and suffering plaintiffs' decedent endured prior to his death, the loss of earnings and earning capacity suffered by plaintiff's decedent and the total limitation and deprivation of the activities, pursuits and pleasures he would have experienced had he lived out the duration of his normal life expectancy" (plaintiff's complaint, ¶82). Since punitive damages are "recoverable by law" in an action brought pursuant to 42 Pa.C.S.A. §8302, and Dr. Smith and the Institute have not challenged Lasavage's use of the phrase "including, but not limited to" in paragraph 82 of the complaint. Compare, *Cicero v. Cominsky*, 25 D. & C. 4th 422, 424 (Luz. Co. 1995) (striking "including, but not limited to" language from plaintiff's complaint), we will assume for purposes of the instant demurrer that Lasavage is advancing a claim for punitive damages.

the law would not permit recovery by the plaintiff upon the facts averred." *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 283 (Pa. Super. 2010). If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Feingold, supra*; *Haun, supra*; *Ira G. Steffy & Son. Inc., supra.*

Lasavage's malpractice claims against Dr. Smith relate to Dr. Smith's treatment of the decedent in late May 2008. Lasavage seeks to hold the institute vicariously liable for the actions of Dr. Smith (plaintiff's complaint, ¶¶4,6,73, 74(a)). In addition, Lasavage separately asserts a corporate liability claim against the Institute pursuant to *Thompson v. Nason Hospital*, 527 Pa. 330, 591 A.2d 703 (1991) and *Hyrcza v. West Penn Allegheny Health System, Inc.*, 978 A.2d 961, 982-983 (Pa. Super. 2009), app. denied, 604 Pa. 706, 987 A.2d 161 (2009). (*Id.*, ¶¶5, 74(b)-(ff) and (ww)-(dd)).

According to the allegations of the complaint, Dr. Smith admitted the decedent to defendant Community Medical Center ("CMC") on May 29, 2008 based upon the results of a myocardial perfusion scan that was performed on the decedent (*Id.*, ¶¶27-28). On that date, Dr. Smith performed a left heart catheterization with placement of stents, following which he issued a physician's order requiring the immediate and daily administration of Plavix and Ecotrin to the decedent in order to prevent clotting (*Id.*, ¶¶29-34). However, the decedent did not receive Plavix on May 29, 2008, nor was he administered Ecotrin or Plavix on May 30, 2008 (*Id.*, ¶¶36-37).

Dr. Smith examined the decedent on May 30, 2008, but took no action to either determine or ensure compliance with his earlier medication order (*Id.*, ¶¶38-40). Instead, Dr. Smith opted to discharge the decedent even though he had not received his required Plavix or Ecotrin (*Id.*, ¶¶41, 54). Dr. Smith thereafter dictated a discharge summary reflecting that the decedent's medications at the time of discharge included Plavix and Ecotrin which were to be administered daily (*Id.*, ¶48). Notwithstanding the fact that Plavix "can only be obtained by a physician's prescription," Dr. Smith discharged the decedent without issuing "any prescription for Plavix" to the decedent (*Id.*, ¶¶50-51).

On May 30, 2008 at 11:20 p.m., the decedent was admitted to Marian Community Hospital with complaints of protracted vomiting and an admitting diagnosis of dehydration (*Id.*, ¶55). The attending physician at Marian Community Hospital issued an order for a cardiology consultation by Dr. Smith "to take place during the morning hours of May 31, 2008" (*Id.*, ¶57). An entry in the hospital chart at 3:00 p.m. on May 31, 2008 states "[w] aiting for cardiology to see patient — if not in by 1900 call MD back to discharge Pt" (*Id.*, ¶58). A later entry made at 7:30 p.m. on that date indicates that Dr. Smith was called and issued a discharge instruction for the decedent to "[r] esume all previous meds as per Dr. Smith," albeit without ever examining or speaking with the decedent to ascertain whether he was taking Plavix or Ecotrin (*Id.*, ¶¶59-60).

On the following day, the "decedent was found dead in his home by members of his family" (*Id.*, ¶61). A subsequent autopsy revealed that his death was attributable to "acute

myocardial infarction caused by complete occlusion of the left anterior descending coronary artery proximal stents by clot/thrombus" (*Id.*, ¶¶62-63). Lasavage commenced this litigation on March 30, 2010, seeking damages under the Wrongful Death Act and the Survival Act.

Lasavage contends that Dr. Smith's "negligence and/ or recklessness" included his failure (a) to ensure that the decedent received Plavix and Ecotrin as ordered on May 29, 2008 and May 30, 2008, (b) to prescribe Plavix for the decedent upon his discharge from CMC, (c) to review decedent's chart prior to discharge to determine whether the medications ordered had been administered, and (d) to consult on the decedent's care when requested to do so at Marian Community Hospital on May 30, 2008 and May 31, 2008 (*Id.*, ¶¶73(b)-(c), (g), (k)-(l)). Lasavage maintains that the Institute is vicariously liable for the "negligence, carelessness and/or recklessness" of Dr. Smith (*Id.*, ¶¶74(a), (nn)-(vv)). Lasavage also asserts independent corporate liability on the part of the Institute (*Id.*, ¶¶74(b)-(ff), (ww)-(ddd)). Finally, Lasavage avers that the actions of Dr. Smith and the Institute "amounted to reckless indifference to the rights of plaintiff's decedent, a conscious indifference to the consequences of their actions, and outrageous, wanton and grossly indifferent conduct" (*Id.*, ¶76.). Dr. Smith and the Institute challenge the legal sufficiency of those averments and Lasavage's concomitant right to punitive damages.

The recovery of punitive damages in medical malpractice litigation is governed by Section 505 of the Medical Care Availability And Reduction of Error (MCARE Act), 40 P.S. §1303.505, which is a reenactment

of Section 812-A of the former Health Care Services Malpractice Act, 40 P.S. §1301.812-A (repealed). See, *Wagner, supra,* at * 4; *Fasula v. Hijazi,* 44 D. & C. 4th 553,561 (Lacka. Co. 1999). Section 505(a) of the MCARE act provides that "[p]unitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others." 40 P.S. §1303.505(a). However, in the context of a medical negligence claim, "[a] showing of gross negligence is insufficient to support an award of punitive damages." 40 P.S. §1303.505(b).

The Superior Court of Pennsylvania recently confirmed that "in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) [s]he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Daniel v. Wyeth Pharmaceuticals, Inc.,* 2011 WL 365500 at * 17 (Pa. Super. 2011) (quoting *Hutchison v. Luddy,* 582 Pa. 114,123, 870 A.2d 766, 772 (2005)). Since professional negligence actions involve allegations that health care professionals deviated from the governing standard of care, see, *Tindall v. Friedman,* 970 A.2d 1159, 1176 (Pa. Super. 2009), punitive damages are generally not recoverable in malpractice actions unless the medical "provider's deviation from the applicable standard of care is so egregious as to evince a conscious or reckless disregard of a patent risk of harm to the patient." *Wagner, supra,* at * 5; *Zazzera v. Roche,* 54 D. & C. 4th 225,232 (Lacka. Co. 2001); *Scott v. Plucknett,* 102 Lacka. Jur. 445, 450 (2001). Whether the conduct of a malpractice defendant rises to the

level of willful, wanton or recklessly indifferent conduct under 40 P.S. §1303.505(a) depends upon the particular circumstances at issue. See e.g., *Klonoski v. Farrell*, 103 Lacka, Jur. 179, 184-185 (2002) (allegations that physician consciously overbooked his surgical schedule for financial reasons and thereby performed surgery hastily and without first reviewing pre-operative diagnostic testing results were sufficient to withstand demurrer to punitive damages claim); *Zazzera*, 54 D. & C. 4th at 234-235 (preliminary objections to punitive damages claim overruled where surgeon erroneously operated on healthy left carotid artery despite earlier ultrasound that he reviewed which revealed that patient's right carotid artery was stenosed and in need of endarterectomy); *Scott*, 102 Lacka. Jur. at 451 (averments that obstetrician (a) left hospital grounds to return to her private office even though she knew that her patient's labor was not being properly monitored, (b) blatantly ignored the advice of a consulting perinatologist regarding the need for an immediate Cesarean delivery, and (c) inexplicably delayed the start of the recommended delivery for more than three hours, adequately averred a claim for punitive damages). Compare, *Wagner*, *supra* at * 6 (contentions that physician failed to prescribe antibiotics, order certain tests or request an infectious disease consult constituted "nothing more than ordinary negligence and are insufficient to support an award of punitive damages."); *Dean v. Community Medical Center*, 46 D. & C. 4th 334, 345-346 (Lacka. Co. 2000) (dismissing punitive damages claim based upon allegations that cardiologist erroneously diagnosed decedent's condition and performed invasive procedure without first administering SBE prophylactic

antibiotics).

Accepting as true the well-pleaded allegations of the complaint, and affording Lasavage the benefit of all inferences reasonably deducible from those facts, it is not clear and free from doubt that Lasavage may not recover punitive damages from Dr. Smith based upon the factual averments of reckless indifference. Lasavage alleges that Dr. Smith was cognizant of the critical need for Plavix and Ecotrin to prevent blood clots following his placement of stents and based upon the results of the decedent's earlier myocardial perfusion scan. Despite that knowledge, Dr. Smith purportedly made no effort to determine whether the medications ordered had been administered to the decedent prior to authorizing his discharge. To compound matters further, Dr. Smith indicated in his discharge summary that the decedent was to be administered Plavix daily, but ostensibly neglected to provide him with the prescription which was necessary for him to obtain that medication.

Even after Dr. Smith became aware of the fact that the decedent was so ill shortly after his discharge from CMC that he had to be readmitted at Marian Community Hospital, Dr. Smith did not speak to the decedent or otherwise investigate whether he was taking the Plavix which had been ordered. Furthermore, although the attending physician at Marian Community Hospital had requested that Dr. Smith promptly see the decedent for a cardiology consultation, Dr. Smith never examined or saw the decedent prior to discharging him by telephone on the evening of May 31, 2008. Based upon the totality of those alleged circumstances, it is arguable that Dr. Smith had

a subjective appreciation of the risk of clotting to which the decedent was exposed and that Dr. Smith failed to act in conscious disregard of that serious risk. See, *Daniel*, *supra*. Thus, the allegations of Lasavage's complaint are sufficient to withstand Dr. Smith's demurrer.

The same cannot be said for Lasavage's punitive damages claim against the Institute based upon its vicarious liability for the actions of Dr. Smith and other unidentified agents. The only allegations in the complaint which conceivably charge the institute with "recklessness" are those which reference the conduct of Dr. Smith or other unnamed "employees, workmen, servants, agents and/or ostensible agents" (plaintiff's complaint, ¶¶73,74). Lasavage's corporate negligence claims against the Institute concern its failure to adopt and enforce adequate policies, to select and retain competent personnel and to use reasonable care in the maintenance of adequate facilities. Lasavage does not set forth any factual averments which remotely suggest any reckless indifference by the Institute in implementing policies, hiring personnel or maintaining safe facilities. The only possible claim of wanton, willful or recklessly indifferent conduct by the Institute relates to its vicarious liability for the actions of Dr. Smith or other agents.

Although section 505(a) and (b) merely incorporate earlier decisional precedent governing punitive damages, section 505(c) of the MCARE Act heightens the burden of proof for vicarious liability for punitive damages. Pennsylvania case law exposes a principal to vicarious liability for punitive damages based upon the conduct of an agent even if the agent did not commit the act at the

direction of the principal, or the principal did not ratify the act. See, *Shiner v. Moriarty*, 706 A.2d 1228, 1240 (Pa. Super. 1998), app. denied, 556 Pa. 711, 729 A.2d 1130 (1998); *Burke v. TransAm Trucking, Inc.*, 605 F.Supp.2d 647, 657 (M.D. Pa. 2009). In contrast, Section 505(c) of the MCARE Act states that "[p]unitive damages shall not be awarded against a health care provider who is only vicariously liable for the actions of its agent that caused the injury unless it can be shown by a preponderance of the evidence that the party knew of and allowed the conduct by its agent that resulted in the award of punitive damages." 40 P.S. §1303.505(c). With the advent of section 505(c) "...and its injection of a *scienter* element into the *respondeat superior* equation, a health care provider may not be vicariously liable for exemplary damages unless it had actual knowledge of the wrongful conduct of its agent and nevertheless allowed it to occur." *Wagner, supra* at *4 (quoting *Dean*, 46 D. & C. 4th at 344 (analyzing identical language in former 40 P.S. §1301.812-A(c))). Accord, *Scott*, 102 Lacka. Jur. at 452. By virtue of this heightened standard of proof for vicarious liability, "a patient must now aver and establish that the health care principal was cognizant of the agent's willful, wanton or recklessly indifferent treatment *and* allowed that conduct to proceed unabated." *Zazzera*, 54 D. & C. 4th at 238 (emphasis in original).

Lasavage's complaint is devoid of any allegation that the Institute was aware of Dr. Smith's actions on May 29, 2008, May 30, 2008 and May 31, 2008 and that it nonetheless allowed that malpractice to occur. Absent such a specific averment, Lasavage's vicarious liability claim against the

Institute for punitive damages is insufficient as a matter of law. Compare, *Scott*, 102 Lacka. Jur. at 452 (overruling demurrer on grounds that "the Scotts have averred that Northeastern OB and Mercy Hospital were cognizant of wrongful conduct by their actual or ostensible agents and nevertheless allowed it to persist."). Consequently, the institute's preliminary objections to Lasavage's claim for punitive damages will be sustained based upon 40 P.S. §1303.505(c).

And now, March 31, 2011, upon consideration of the preliminary objections of defendants Stafford M. Smith, M.D. and Scranton Heart Institute, P.C., to the plaintiff's allegations of outrageous, wanton, reckless and grossly indifferent conduct in paragraphs 71, 72, 73, 74(a) and 76 of the complaint, the memoranda of law submitted by the parties, and the oral argument of counsel on March 30, 2011, and based upon the reasoning set forth above, it is hereby ordered and decreed that:

1. The preliminary objections of defendant Stafford M. Smith, M.D. to the allegations of reckless indifference and any potential claim for punitive damages are overruled;

2. The preliminary objections of defendant Scranton Heart Institute, P.C. to the allegations of reckless indifference and any vicarious liability claim for punitive damages are sustained; and

3. Within the next twenty (20) days, defendants Stafford M. Smith, M.D. and Scranton Heart Institute, P.C. shall file a responsive pleading to the complaint.