## Rogers v. Thomas

C.P. of Lackawanna County, No. 12 CV 1464.

*Michael J. Pisanchyn, Jr.,* for plaintiff
*Mark T. Sheridan,* for defendant Lloyd Thomas
*Gary L. Weber,* for defendants Hayden Thomas and The Outdoorsman, Inc.

NEALON, *J.,* May 10, 2013—The estate of a shooting victim has filed this tort action against the shooter, his father and a Susquehanna County business that sells firearms. The adult shooter's father has demurred to this action on the ground that he owed no duty of care to the decedent under the circumstances alleged. The shooter, his father and the gun sales business have also filed preliminary objections to the estate's claim for punitive damages. In addition, the shooter challenges certain averments as allegedly containing scandalous or impertinent matters, and the gun business objects to the complaint's nonspecific references to "defendants" in various liability allegations.

The complaint is devoid of any averments which suggest or imply that the adult shooter could use the gun only with

the consent of his father or that the father had reason to believe that he could prevent his adult son from using the gun by withholding his consent. Absent some indication that the gun in question was under the requisite control of the father, there is no basis for imposing liability upon the father based upon the facts averred. Therefore, the father's demurrer will be sustained.

The estate has erroneously averred its claim for punitive damages as an independent cause of action, rather than as an incidental item of damages recoverable under the Survival Act. For that reason, the estate will be directed to file an amended complaint setting forth its punitive damages claim in the survival action, but in all other respects, the objections to the punitive damages claim will be overruled. By virtue of the dismissal of the claims against the shooter's father, certain averments will be stricken as impertinent whereas other allegations which have been challenged by the defense will remain in the pleading since they are relevant to the punitive damages claim against the shooter. Last, the objections to the repeated use of the term "defendants" in certain paragraphs of the complaint will be sustained and the estate will be directed to file an amended complaint specifically identifying which liability allegations are applicable to what defendants.

## I. FACTUAL BACKGROUND

The estate of Joshua Rogers ("the decedent") has instituted this wrongful death and survival litigation against defendant Lloyd Thomas ("Lloyd Thomas"), his father, defendant Hayden Thomas ("Hayden Thomas"), and a local business, The Outdoorsman, Inc. ("Outdoorsman").

According to the allegations of the complaint, Lloyd Thomas was using controlled substances and discharging firearms on his father's Hallstead property during the afternoon of February 11, 2012. (Docket entry no. 1 at ¶¶ 25-28). At that time, the decedent was operating his motor vehicle in the vicinity of that Hallstead property and reportedly "believed that their *(sic)* vehicle had been shot." (*Id.* at ¶¶ 26, 29). Upon speaking to a local resident and being advised "that the bullet which hit the vehicle most likely came from" the Hallstead property, the decedent allegedly "went to the property to try to find out who had shot the vehicle." (*Id.* at ¶¶ 30-31).

Shortly thereafter, neighbors heard "the sound of gunfire" and advised the Pennsylvania State Police ("PSP") that "[t]he two spurts sounded more like they had been fired from a pistol, for one thing, and they seemed to have come from closer to the home than from [Lloyd] Thomas' regular shooting area." (*Id.* at ¶¶ 32, 34). Lloyd Thomas allegedly admitted to the PSP "that he was at his father's home when a man came to the door" and that "[h]e shot the man," who was later identified as the decedent. (*Id.* at ¶¶ 37, 47). The PSP discovered the decedent's "lifeless body laying feet from his black Ford Mustang," and an autopsy revealed that the fatal gun shot wounds "were imposed by the defendant, Lloyd Rogers *(sic)*." (*Id.* at ¶¶36, 41). Decedent's estate avers that "[t]he defendant Lloyd Thomas (but not limited) to *(sic)* negligently, unreasonably, accidentally, recklessly, outrageously and/or intentional (*sic*) shot plaintiff's Decedent Joshua Rogers in the back and/or body while he was either walking,

running and/or retreating from defendant Lloyd Thomas." (*Id.* at ¶ 50).

The complaint contains four counts which are entitled "negligence," "wrongful death," "survival action" and "punitive damages." (*Id.* at pp. 10, 25, 26, 28). Regrettably, the averments setting forth the various claims merely refer generally to "the defendants" and "co-defendants" without specifying which allegations are applicable to which defendants. After averring that "the defendants" owed duties of care to the decedent, (*Id.* at ¶¶ 52-55), the estate alleges that the shooting incident "was directly and proximately caused by the negligence, carelessness and recklessness of some and/or all of the defendants." (*Id.* at ¶ 56). The culpable conduct of those defendants allegedly included "entrusting and/or allowing access to their house, cabin and/or their gun(s), weapon(s) and/or firearm(s) to defendant." (*Id.* at ¶ 57).

Although decedent's estate does not allege that an employer - employee relationship existed between any of the named defendants, it nonetheless avers that "all defendants" owed various duties "to only hire employees" with certain histories and competencies, (*Id.* at ¶¶ 58-61), "a duty to train its employees" in a certain manner, (*Id.* at ¶ 64), "a duty to have random drug and alcohol checks on its employees," (*Id.* at ¶ 65), and "a duty to complete criminal background" investigations of "defendants." (*Id.* at ¶ 71). The estate further asserts actionable conduct by "all defendants" for breaching duties "to have policies and procedures in place" regarding firearm use and employee training. (*Id.* at ¶¶ 62-63, 66-69, 72). Included among

these alleged obligations that "all defendants owed to" the decedent is "a duty to have policies and procedure (*sic*) in place which would mandate that you ask questions first and not just begin to shoot in the direction of and/or at persons unless there were no other alternatives." (*Id.* at ¶ 74).

The estate also contends that "all defendants owed to [decedent] a duty to have inspected the gun, firearm and/or weapon to be sure that it would not cause injury to persons such as [decedent]," "a duty to securely, properly and reasonably restrain himself as well and (*sic*) the weapon as to prevent any injury to any person or property," and "a duty to use his weapon in accordance with the ordinances of the Township where the incident occurred in (*sic*),... and the laws of the Commonwealth of Pennsylvania including...any title relating to guns, firearms, weapons, ammo (*sic*), discharging of weapons and/or the like." (*Id.* at ¶¶ 75, 77, 79). In paragraph 84 of the complaint, the estate reiterates the foregoing allegations of wrongful conduct, (*Id.* at ¶ 84(a)-(ii)), and additionally avers that the negligent, reckless and outrageous conduct of "defendants" included "[f]ailing to be continuously alert," "[f]ailure to properly observe the situation," "[f]ailure to warn plaintiff Decedent on the impending danger," and "[f]ailure to take proper evasive action so as to avoid the shooting and/or not staying in this house and calling police instead of coming out of the house shooting." (*Id.* at ¶ 84(jj)-(pp)).

The complaint asserts that as a result of the shooting incident and resulting fatal injuries, "the Decedent have (*sic*) incurred, yet incur (*sic*) and will/may incur various

costs and expenses," "have (*sic*) been, yet are (*sic*) and will/ may for an indefinite time in the future be forced to forego the pleasures of life," "have (*sic*) suffered, yet suffer (*sic*) and will/may [suffer] for an indefinite time in the future physical pain, mental anguish and humiliation," "have (*sic*) been forced to undergo hospitalization and medical treatment," and "has expended various and substantial sums of money for the medicine and medical attention in and above endeavoring to treat and cure themselves (*sic*) of their (*sic*) injuries all to their (*sic*) great financial loss and damage." (*Id.* at ¶¶ 88-92). In counts II and III, damages are sought under the Wrongful Death Act, 42 Pa.C.S.A. § 8301, and the Survival Act, 42 Pa.C.S.A. § 8302. (*Id.* at ¶¶ 93-100). Punitive damages are demanded in count IV based upon defendants' "reckless indifference toward the rights" of the decedent, "conscious indifference to the consequences of their actions," and "reckless disregard for the welfare" of the decedent. (*Id.* at ¶¶ 101-103).

Lloyd Thomas, Hayden Thomas and The Outdoorsman filed preliminary objections asserting improper venue in Lackawanna County. Lloyd Thomas also demurred to the punitive damages claim and sought to strike certain averments on the grounds that they contain scandalous or impertinent matter. (Docket entry no. 8 at ¶¶ 10-14). Hayden Thomas demurred to this suit in its entirety on the basis that a parent does not have a duty to control the conduct of a forty-five year old child. (Docket entry no. 12 at ¶¶ 12-20). Hayden Thomas also challenged the legal sufficiency of the allegations involving the hiring, investigation and testing of "employees" since Lloyd

Thomas was not an employee of Hayden Thomas. (*Id.* at ¶¶ 21-24). Last, Hayden Thomas and The Outdoorsman seek to strike the claim for punitive damages, as well as the multiple paragraphs of the complaint which baldly reference "the defendants" without identifying the relevant defendant by name. (*Id.* at ¶¶ 25-38).

By order dated June 20, 2012, the estate was directed to "conduct and complete its discovery on the narrow issue of whether The Outdoorsman, Inc., regularly conducts business in Lackawanna County under the 'quality-quantity' test" so that the defense challenge to venue could be properly addressed. *Rogers v. Thomas*, 2012 WL 2603107, at * 5 (Lacka. Co. 2012). In his preliminary objections, Lloyd Thomas posited that "[i]f the court does transfer venue to Susquehanna County, it is respectfully submitted that the court of Common Pleas of Susquehanna County is the appropriate court to rule on the balance of the defendants' preliminary objections." (Docket entry no. 8 at p. 4). Consequently, the order dated June 20, 2012, expressly stated that "[a]ny ruling on defendants' remaining preliminary objections will be deferred pending disposition of defendants' preliminary objections asserting improper venue in Lackawanna County." *Rogers, supra.*

Counsel for the parties subsequently reported that the venue challenge has been rendered moot by virtue of Lloyd Thomas' relocation to Lackawanna County and his stipulation to be served with the complaint in Lackawanna County. Although the preliminary objections raising improper venue have been resolved, the remaining issues must now be addressed. The preliminary objections will

be considered in the order in which they were filed.

## II. DISCUSSION

### (A) STANDARD OF REVIEW

preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. *Albert v. Erie Insurance Exchange,* 2013 WL 1139207, at * 3 (Pa. Super. 2013). When considering preliminary objections, all material facts set forth in the challenged pleading are admitted as true, as well as all reasonable inferences that can be drawn from those averments. *Hand v. City of Philadelphia,* 2013 WL 782620, at * 3 (Pa. Super. 2013); *Pachucy v. Nutrition, Inc.,* 9 Pa. D. & C. 5th 105, 112 (Lacka. Co. 2009). preliminary objections which seek the dismissal of a cause of action may be sustained only in cases that are clear and free from doubt. *Albert, supra; Majorsky v. Douglas,* 58 A.3d 1250, 1269 (Pa. Super. 2012). To be clear and free from doubt that dismissal is appropriate, it must appear with certainty that the law would not permit recovery by the plaintiff based upon the facts averred. *Neelu Enterprises, Inc. v. Agarwal,* 58 A.3d 828, 830 (Pa. Super. 2012). If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections. *Albert, supra; Majorsky, supra.*

### (B) PARENTAL DUTY OF HAYDEN THOMAS

Hayden Thomas demurs to the causes of action asserted against him, and argues that the estate has failed to aver a cognizable duty on his part to prevent the shooting which occurred on February 11, 2012. The estate alleges that

Lloyd Thomas had "a history of using illegal drugs while using or being allowed to use firearms," "a history of acting in strange and/or threatening manner and/or a manner which would evidence he was not safe to be allowed to be entrusted with dangerous weapons," and "a history of shooting firearms in an unsafe manner, unsafe places and not following common sense and/or safety shooting rules, regulations, customs and/or laws." (Docket entry no. 1 at ¶¶ 9-11). It avers that the foregoing conduct by Lloyd Thomas "clearly evidenced unreasonable actions and inactions which would clearly lead a reasonable person to not allow him access to deadly firearms and/or prevent the firearms from being accessed by him." (*Id.* at ¶ 12). It further alleges that Hayden Thomas "knew or should have known" of the foregoing histories on the part of Lloyd Thomas, (*Id.* at ¶¶ 15-18), and contends that "Hayden Thomas knew or should have known defendant Lloyd Thomas has a history of acting in [a] strange and/or threatening manner and/or a manner which would evidence he was not safe to be allowed to/entrusted with and/or give (*sic*) access to dangerous weapons and/or guns/firearms." (*Id.* at ¶ 17).

In his preliminary objections, Hayden Thomas notes that "plaintiff has not alleged that Hayden Thomas was present during the shooting," "has not alleged that Lloyd Thomas used any of Hayden Thomas' guns in the shooting," and "has not alleged that Hayden Thomas had the right or the ability to control Lloyd Thomas' use of weapons, owned by Lloyd Thomas or in Lloyd Thomas' possession." (Docket Entry No. 13 at p. 7). Hayden Thomas posits that

"[i]n this case, there are boilerplate allegations of strange behavior or drug use, but nothing is pleaded that would allow a jury to impose a duty on Hayden Thomas to have continuously supervised his adult son, or rendered him liable for the death of an unrelated third party, whose presence at the house could not have been anticipated." (*Id.* at p. 8). In opposing Hayden Thomas' demurrer, the decedent's estate asserts that Lloyd Thomas' "use of illicit/ illegal drugs and his propensity to act in a strange and/or threatening manner," when coupled with Hayden Thomas' "knowledge of these activities and/or propensities or the reasonableness that one should have known, creates a duty for that person." (Docket entry no. 17 at p. 9).

Pennsylvania is a fact-pleading state, and "[a]s a minimum, a pleader must set forth concisely the facts upon which his cause of action is based." *McShea v. City of Philadelphia,* 606 Pa. 88, 96, 995 A.2d 334, 339 (2010). The complaint must not only apprise the defendant of the claim being asserted, but it must also summarize those facts essential to support the claim. *Feingold v. Hendrzak,* 15 A.3d 937, 942 (Pa. Super. 2011) (quoting *Foster v. UPMC South Side Hospital,* 2 A.3d 655, 666 (Pa. Super. 2010), *app. denied,* 608 Pa. 647, 12 A.3d 371 (2010)). To state a valid tort claim, the plaintiff must aver: the presence of a legal duty of care that defendant owed to plaintiff; a breach of that duty of care; a causal connection between that breach and the injury alleged; and actual damage suffered as a result. *Wright v. Eastman,* 63 A.3d 281, 284 (Pa. Super. 2013). The existence of a duty in tort is a question of law for the court to decide in the first

instance. *Scampone v. Highland Park Care Center, LLC,* 57 A.3d 582, 600 (Pa. 2012) ("The question of duty in tort is a legal determination, assigned in the first instance to the trial court."); *Bubba v. Com., Dept. of Transportation,* 61 A.3d 313, 316 (Pa. Cmwlth. 2013) ("The question of whether a duty exists is purely a question of law.").

Generally, there is no duty to control the acts of a third party unless the defendant stands in a "special relationship" with either the person whose conduct needs to be controlled or the intended victim of such conduct. *McMahon v. Pleasant Valley West Association,* 952 A.2d 731, 736 (Pa. Super. 2008), *app. denied,* 599 Pa. 702, 961 A.2d 860, 2008); *Sabric v. Martin,* 2012 WL 1952197, at * 4 (M.D. Pa. 2012). In Pennsylvania, such "special relationships" are limited to those described in sections 316-319 of the Restatement (Second) of Torts, and include a parent's duty to control a minor child (section 316), a master's duty to control a servant (section 317), a landowner's duty to control a licensee (section 318), and the duty of those in charge of individuals with dangerous propensities to control those particular individuals (section 319). *McMahon, supra*; *McCandless v. Edwards,* 909 A.2d 900, 903 n. 1 (Pa. Super. 2006), *app. denied,* 592 Pa. 768, 923 A.2d 1174 (2007); *Sedor v. Community Medical Center,* 16 Pa. D. & C. 5th 193, 205 (Lacka. Co. 2010). In support of its claim of a duty on the part of Hayden Thomas, the decedent's estate relies solely upon *Kuhns v. Brugger,* 390 Pa. 331, 135 A.2d 395 (1957), for the proposition that as the parent of the shooter, Hayden Thomas owed a duty of care to the decedent. (Docket entry no. 17 at p. 9).

The mere relation of parent and child imposes no liability upon the parent for the torts of the child. J. H. ex rel. *Hoffman v. Pellak*, 764 A.2d 64, 66 (Pa. Super. 2000). Nor does tort liability attach merely because the fatal injury was inflicted by the child on the parent's property. *Maxwell v. Keas*, 433 Pa. Super. 70, 73, 639 A.2d 1215, 1216 (1994). Even in cases of injuries tortiously inflicted by minor children, the liability of a parent under Section 316 of the Restatement (Second) of Torts is limited to those instances in which (1) the parent has the ability to control the child, (2) the parent knows of the necessity for exercising such control over the child, (3) the parent has the opportunity to exercise such control, and (4) the parent's failure to control the child created an unreasonable risk of bodily harm to others.[1] *K. H. v. J. R.*, 573 Pa. 481, 496-497, 826 A.2d 863, 873 (2003); *Pellak, supra*.

In the *Kuhns* case relied upon by the estate, the grandfather of a 12 year old boy was sued for negligence after the grandson shot another juvenile with an automatic pistol that the grandfather "kept in a *loaded* condition in an unlocked dresser drawer in his unlocked bedroom." *Kuhns*, 390 Pa. at 336, 135 A.2d at 399 (emphasis in original). The trial evidence revealed "that the pistol was owned by the [grandfather], that it was kept in an unlocked dresser drawer in his unlocked bedroom with a clip of cartridges in its handle, that young [grandson] not only was aware

---

1. 1. Section 316 of the Restatement is unquestionably inapplicable in this case since it is confined to those instances in which "[a] parent is under a duty to exercise reasonable care so as to control his minor child" from harming others. *Pellak, supra* (quoting Restatement (Second) of Torts § 316). It is undisputed that Lloyd Thomas was forty-five (45) years old at the time of the shooting.

of the existence of the pistol — having been shown it on several occasions by [grandfather] — but also its place of containment in the bedroom, that the unlocked bedroom was open to members of the family, including young grandchildren, [and] that [grandson] and [minor shooting victim] were accustomed to enter the bedroom" where the minor victim was shot. *Id.* at 343, 135 A.2d at 402-403. In deciding whether the grandfather owed a duty of care under the circumstances, the Supreme Court reasoned:

> It is contrary to every human experience to expect that children, particularly boys, would not want to touch and handle a pistol. There is something magnetic about highly engined firearms with their harmonious lines and graceful proportions which attracts both young and old, whether the ordnance be a beautiful revolver, an old-fashioned fowling piece or a piece of artillery. [Grandfather] knew or should have known that any 12 year old boy, such as either of his two grandsons, might rummage around his bedroom and, finding the pistol, handle it. Applying either the "foresight" or the "hindsight" test, it is evident that [grandfather] should have anticipated and foreseen the likelihood of harm resulting from leaving the loaded pistol in an unlocked drawer in a bedroom frequented by children.

*Id.* at 345, 135 A.2d at 403-404.

The plaintiff in *Kuhns* asserted that the grandfather "was negligent in permitting a highly dangerous instrumentality to be in a place where the incautious hands of a child might come in contact with it, and the handling and discharge

of this instrumentality by the child was the natural and probable consequence of [grandfather's] negligence and such a consequence as might and ought to have been foreseen by [grandfather] as likely to flow from his act." *Id.* at 346-347, 135 A.2d at 404. In concluding that the grandfather had breached a cognizable duty of care, the Supreme Court referenced section 308 of the Restatement addressing negligence in permitting "a third person to use a thing or to engage in an activity which is under the control of the actor if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others." *Id.* at 347-348, 135 A.2d at 404-405. Specifically, the court relied upon comment (b) to section 308 stating that "it is negligence to place loaded firearms or poisons within the reach of young children or feeble-minded adults."[2] *Id.* at 348, 135 A.2d at 405. *Accord Mendola v. Sambol,* 166 Pa. Super. 351, 354, 71 A.2d 827, 829 (1950) (citing comment (b) to § 308 of the Restatement and recognizing parent negligence in

---

2. The *Kuhns* court also held that "[a]ny loaded firearm, including a pistol, is a highly dangerous instrumentality and, since its possession or use is attended by extraordinary danger, any person having it in his possession or using it is bound to exercise extraordinary care." *Id.* at 338, 135 A.2d at 401. However, the Supreme Court later rejected the suggestion "that this Commonwealth recognizes a separate standard of care, 'extraordinary care,' for dangerous instrumentalities," and instead confirmed that "this Commonwealth recognizes only one standard of care in negligence actions involving dangerous instrumentalities - - the standard of reasonable care under the circumstances." *Stewart v. Motts,* 539 Pa. 596, 603, 605, 654 A.2d 535, 539 (1995). Under that standard of reasonable care, "when a reasonable man is presented with circumstances involving the use of dangerous instrumentalities, he must necessarily exercise a 'higher' degree of care proportionate to the danger." *Id.* at 605, 654 A.2d at 539-540. *See also Loff v. Granville,* 51 Pa. D. & C. 4th 563, 567-570 (Lacka. Co. 2001).

placing loaded firearms within the reach of young children or feeble-minded adults).

Seven years after *Kuhns*, the Superior Court declined to extend the firearms duty analysis in Kuhns to cases involving adult children. In *Neyman v. Soutter*, 205 Pa. Super. 8, 205 A.2d 685 (1964), *aff'd*, 417 Pa. 634, 209 A.2d 430 (1965), a mother was sued for personal injuries after her 23 year old son "took a pistol from a drawer in the house and in the course of an argument with plaintiff shot him in the arm." *Id.* at 9, 205 A.2d at 686. Plaintiff introduced evidence of "irresponsible" conduct by the adult son, his medical discharge from the army, his recurring problem of occasional blackouts, and his prior exhibition of "the gun in a clothing store on property owned by his mother." *Id.* at 10, 205 A.2d at 686. An en banc panel of the Superior Court distinguished *Kuhns* on the basis that it involved a minor child, and held that the mother was chargeable with a breach of duty only if the plaintiff first established (1) her control over the instrumentality or her adult son, and (2) her knowledge that her son "intended or was likely to use the gun in such a manner as to create an unreasonable risk of harm to others." *Id.* at 11, 205 A.2d at 687. The mother "knew her son had access to the gun but there [wa]s no evidence of any instance where he harmed or threatened anyone with it." *Id.* at 10, 205 A.2d at 687. In holding that the mother could not be held liable, the Superior Court concluded that there was "no basis for a finding that [mother] had such control over either the actor or the gun as would make her guilty of negligence in not preventing [son's] action." *Id.* at 12, 205 A.2d at 687.

Section 308 of the Restatement, which served as the basis for the negligence finding in *Kuhns*, provides:

It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should have known that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

*Gray v. United States*, 2013 WL 1703402, at * 12 (M.D; Pa. 2013) (quoting Restatement (Second) of Torts § 308). Comment (a) to section 308 makes clear that the words "under the control of the actor" in § 308 "are used to indicate that the third person is entitled to possess or use the thing or engage in the activity only by the consent of the actor, and that the actor has reason to believe that by withholding consent he can prevent the third person from using the thing or engaging in the activity." *Wittrien v. Burkholder,* 965 A.2d 1229, 1232 (Pa. Super. 2009). In cases involving minor children's use of firearms, the appellate courts have concluded that by virtue of the child's minority, the gun at issue was "under the control" of the custodial parents.[3] *See, e.g., Frey v. Smith*, 454 Pa. Super. 242, 685 A.2d 169 (1996) (parents allowed their minor son unsupervised use of an air gun), *app. denied*, 549 Pa. 701, 700 A.2d 441 (1997); *Mendola, supra* (father subject

---

3. The minority of the child establishes the parents' ability, necessity and opportunity to control, as per section 316 of the Restatement, since "the very youth of the child is likely to give the parent more effective ability to control its actions and to make it more often necessary to exercise it." *K.H.*, 573 Pa. at 497, 826 A.2d at 873 (quoting Restatement (Second) of Torts §316, cmt. c).

to liability under §308 where he left gun unattended and his eleven-year-old son used it to shoot another child). *See also Wittrien*, 965 A.2d at 1233 (discussing *Frey* and *Mendola* and stating that "[s]ince each of the foregoing cases involved a minor child who gained possession of a gun, the weapon in question was within the control of the defendant parent.").

"While Section 308 advances a general principle regarding the type of conduct which will support a finding of negligence, [plaintiff] must still establish that the [defendant] owed a duty to [plaintiff's] decedent which is recognized at law." *Johnson*, 410 Pa. Super. at 641, 600 A.2d at 970. To prove a *prima facie* case of negligent entrustment under section 308, "the plaintiff must show both that the third party could possess the harmful item, or engage in the harmful action only with the consent of the defendant, and that the defendant had reason to think that if it withheld consent, the third party would no longer be able to possess the item or participate in the activity." *Midgette v. Wal-Mart Stores, Inc.*, 317 F.Supp.2d 550, 568 (E.D. Pa. 2004), *aff'd*, 121 Fed.Appx. 980 (3d Cir. 2005). Thus, liability may be imposed under section 308 if the shooter was entitled to possess the gun only by the consent of the defendant, and the defendant had reason to believe that defendant could prevent the shooter from using the gun if the defendant withheld consent. *See Johnson*, 410 Pa. Super. at 643, 600 A.2d at 971 (fact that fellow hunter "considered taking [minor's] gun away from him because he was acting erratically" may have "indicate[d] that [fellow hunter] had reason to believe that he could

prevent [minor] from hunting," but did not demonstrate "that [fellow hunter] was in control of [minor's] gun as contemplated by Section 308 of the Restatement.").

The application of the "control" component of the section 308 test to an adult shooter is best illustrated in the 2009 decision in *Wittrien*. In that case, an African-American was shot by a 20 year old and later filed suit against the shooter's parents. Both parents "knew their 20-year old son, who lived with them, had violent propensities; became violent when he drank; and had a history of violent behavior." *Wittrien*, 965 A.2d at 1231. The shooter's father "realized his son 'shouldn't have had a shotgun,'...described his son as a 'ticking time bomb,'" was aware of "his son's ongoing communications with hate groups" and his "prior conviction for assault stemming from racial intimidation," and knew that his son was "listening to pretty bad tapes [about] killing black people" and had been "arrested... for an assault on a black man at their work." *Id.* The mother acknowledged that her son was "into white supremacy," "had an anger problem" since 11th grade and "had to attend Anger Management and pay a fine" for his assault conviction. *Id.* Additionally, the parents had "confiscated the gun nine months before the shooting for a short period of time after [their] son threatened suicide." *Id.* at 1233.

The Superior Court in *Wittrien* held, as a matter of law, that the parents could not be held liable under section 308 since the foregoing evidence did not to establish that the parents "had the right to control the gun at the date of the shooting." *Id.* It reasoned that the parents' "temporary

confiscation of the gun in an emergency situation fails to support a conclusion that [their son] had the right to use the gun 'only by the consent' of [the parents]." *Id.* Moreover, although the record contained evidence of the son's "violent propensities and bigotry, there [wa]s no evidence of any cognitive disability that would render him a 'feebleminded adult' whose mental capacity is commensurate with that of a young child." *Id.* Based upon the lack of the requisite control over the gun or the shooter, the parents of the adult child were entitled to judgment in their favor. *Id.*

In accordance with Pa.R.C.P. 1019(a), the complaint filed by the decedent's estate in this case must concisely set forth the facts upon which the causes of action are based. *See McShea, supra*; *Steinger v. Markel*, 600 Pa. 515, 526-527, 968 A.2d 1253, 1260 (2009). The complaint does not allege any facts which remotely suggest or infer that Lloyd Thomas could possess or use the subject gun only with Hayden Thomas' consent, or that Hayden Thomas had reason to believe that by withholding his consent, he could prevent Lloyd Thomas from using that gun. Rather, the complaint merely avers that Hayden Thomas knew or should have known of Lloyd Thomas' history of drug use, strange or threatening acts, and use of firearms in an unsafe manner. Those allegations reflect much less awareness than the knowledge of racially motivated violence and corresponding ability to confiscate the gun which were deemed insufficient to impose a duty of care in Wittrien. Furthermore, the estate has not alleged any cognitive disability or diminished mental capacity which could

possibly render Lloyd Thomas a "feeble-minded adult." Therefore, even if the factual averments contained in the complaint, as well as all reasonable inferences deducible therefrom, are accepted as true, they are insufficient as a matter of law to create a duty of care on the part of Hayden Thomas under section 308 of the Restatement.

The sole authority cited by the estate as ground for the recognition of a duty on Hayden Thomas' behalf is *Kuhns* and its analysis of section 308 in the context of a shooting by a minor child. (Docket entry no. 17 at p. 9). But even if the estate had alternatively advocated the existence of a duty under section 319 of the Restatement, its argument would be without merit. Section 319, entitled "Duty of Those In Charge of Person Having Dangerous Propensities," states:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

*Brisbine v. Outside In School of Experiential Education, Inc.,* 799 A.2d 89, 93 (Pa. Super. 2002) (quoting Restatement (Second) of Torts §319), *app. denied,* 572 Pa. 746, 816 A.2d 1101 (2003). The accompanying comment to section 319 identifies two situations in which section 319 is applicable: (1) where the defendant "has charge of one or more of a class of persons to whom the tendency to act injuriously is normal;" and (2) where defendant "has charge of a person who has a 'peculiar tendency'

to act injuriously 'of which the actor from personal experience or otherwise knows or should know.'" *Id.* (quoting Restatement (Second) of Torts § 319, cmt. a). "Pennsylvania courts have traditionally applied Section 319 to cases involving mentally ill patients and prisoners." *Johnson*, 410 Pa. Super. at 644 n. 7, 600 A.2d at 971 n. 7.

The complaint does not allege that Hayden Thomas took "charge" of Lloyd Thomas during the relevant time period. Nor are any facts averred in the complaint from which it could be inferred that Hayden Thomas "ha[d] charge" of his adult son on February 11, 2012. *See Johnson, supra* (finding Section 319 inapplicable in the absence of "evidence that any of the appellees actually took charge of [the shooter] in order to trigger application of Section 319."). The estate has likewise failed to allege any mental disability or comparable condition which would qualify Lloyd Thomas as a person with a "peculiar tendency to act injuriously." *See Brisbine*, 799 A.2d at 94 (declining to apply section 319 to a private contractor, which provided court-ordered educational and rehabilitative services to juveniles, after juvenile who had a history of taking his mother's car for joy rides, absconded from juvenile program and caused fatal car accident). As such, section 319 has no application to this case.

In sum, the estate has failed to allege any facts which arguably create a duty on the part of Hayden Thomas to control the acts of his adult son. Absent such a duty, the estate cannot state a cause of action in tort based upon the facts averred. Even after the factual allegations of the complaint are accepted as true, it is clear and free from

doubt that the law does not permit recovery under the circumstances alleged. Accordingly, the demurrer filed by Hayden Thomas will be sustained and all claims asserted against Hayden Thomas will be dismissed.

## (C) PUNITIVE DAMAGES CLAIM

Lloyd Thomas and The Outdoorsman both demur to any claims for punitive damages, and assert that the complaint does not allege sufficient facts to support a charge of outrageous conduct. (Docket entry no. 9 at p. 6; docket entry no. 13 at pp. 11-12). Lloyd Thomas further objects to the estate's assertion of a claim for punitive damages as a separate cause of action in count IV of the complaint, rather than as merely incidental to a recognized cause of action. (Docket entry no. 9 at pp. 5-6). In response, the estate argues that the "complaint as a whole most certainly amounts to reckless conduct making it foreseeable that punitive damages would be appropriate." (Docket entry no. 17 at p. 5).

Punitive damages may be recoverable where the tortfeasor's actions are so outrageous as to demonstrate willful, wanton, or reckless conduct. *Phillips v. Cricket Lighters*, 584 Pa. 179, 189, 883 A.2d 439, 445 (2005). A punitive damages claim "must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) [s]he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Hutchison v. Luddy*, 582 Pa. 114, 124, 870 A.2d 766, 772 (2005); *Weston v. Northampton Personal Care, Inc.*, 62 A.3d 947, 961 (Pa. Super. 2013). The Superior Court

of Pennsylvania has concluded that wanton, willful and reckless conduct are conditions of the mind which may be averred generally under Pa.R.C.P. 1019(b), *see Archibald v. Kemble*, 971 A.2d 513, 519 (Pa. Super. 2009), *app. denied*, 605 Pa. 678, 989 A.2d 914 (2010), and we have previously noted that such punitive misconduct may be alleged generally and nevertheless withstand preliminary objections asserting factual insufficiency. *See, e.g., Mellor v. O'Brien*, 2012 WL 407389, at * 9 (Lacka. Co. 2012) ("Following *Archibald*, a party may apparently aver recklessness generally under Rule 1019(b)."); *Maloney v. Fidelity Deposit & Discount Bank*, 2011 WL 7678533, at * 5 (Lacka. Co. 2011); *Freethy v. Goike*, 2011 WL 7177007, at * 6 (Lacka. Co. 2011).

Throughout the complaint, the estate has generally averred that Lloyd Thomas and The Outdoorsman engaged in outrageous and reckless conduct. (Docket entry no. 1 at ¶¶ 28, 38-39, 50, 56, 83, 102-103). Based upon *Archibald,* the estate may allege those states of mind generally under Rule 1019(b). *See Mellor, supra; Maloney, supra; Freethy, supra.* Consequently, the preliminary objections of Lloyd Thomas and The Outdoorsman seeking to dismiss the estate's punitive damages claim based upon lack of factual specificity, will be overruled. Once discovery has been completed, Lloyd Thomas and The Outdoorsman may renew their request to strike the punitive damages claim via a motion for partial summary judgment.

It is well settled that "[a] request for punitive damages does not constitute a cause of action in and of itself," and "is merely incidental to a cause of action." *Weston*, 62 A.3d at 961; *McClellan v. Health Maintenance Organization of*

*Pennsylvania*, 413 Pa. Super. 128, 144, 604 A.2d 1053, 1061 (1992), *app. denied*, 532 Pa. 664, 616 A.2d 985 (1992). In the context of a death action, a decedent's estate may recover punitive damages under the Survival Act, 42 Pa.C.S.A. § 8302, provided that the decedent could have recovered punitive damages had [s]he lived. *Harvey v. Hassinger*, 315 Pa. Super. 97, 102, 461 A.2d 814, 816 (1983); *Lasavage v. Smith*, 23 Pa. D. & C. 5th 334 n. 1 (Lacka. Co. 2011); *Wagner v. Onofrey*, 2006 WL 3704801, at * 3 n. 3 (Lacka. Co. 2006). Therefore, any claim for punitive damages in this case must be set forth in count III of the complaint entitled "Survival Action," rather than as a separate cause of action in count IV which is labeled as "Punitive Damages." For that reason, Lloyd Thomas' motion to strike count IV of the complaint will be granted, and the estate will be directed to file an amended complaint setting forth any claim for punitive damages in count III "Survival Action."

## (D) SCANDALOUS AND IMPERTINENT AVERMENTS

Lloyd Thomas also seeks to strike the allegations contained in paragraphs 8, 9, 10, 11, 12, 27, 37 and 50 as including scandalous and impertinent matters in contravention of Pa.R.C.P. 1028(a)(2). Specifically, he contends that the averments that he purportedly had histories of "illegal drug use," "acting unreasonably," "using illegal drugs while using or being allowed to use firearms," "acting in [a] strange and/or threatening and/or a manner which would evidence he was not safe to be allowed to be entrusted with dangerous weapons," "using illicit/illegal controlled substances," "chas[ing] down" the

decedent and shooting "him in the back," and shooting the decedent "in the back and/or body while he was either walking, running and/or retreating from defendant Lloyd Thomas" should be stricken pursuant to Pa.R.C.P. 1028(a)(2). (Docket entry no. 1 at ¶¶ 8-12, 27, 37, 50). Lloyd Thomas maintains that "[t]hese so-called allegations are, without question, highly prejudicial and are not set forth with any factual underpinnings in the least." (Docket entry no. 9 at p. 4). The estate replies that these allegations supposedly support the conclusion "that co-defendant knew or should have known of defendant's, Lloyd Thomas, drug use and dangerous behavior, and should have been guided in the same when it came to the use of firearms." (Docket entry no. 17 at p. 8).

Rule 1028(a)(2) authorizes the filing of preliminary objections to a pleading which includes scandalous or impertinent matter. *See Piunti v. Com., Dept. of Labor and Industry*, 900 A.2d 1017, 1019 (Pa. Cmwlth. 2006). To be considered scandalous or impertinent, the allegations must be "immaterial and inappropriate" to the proof required to support the cause of action. *Diess v. Pennsylvania Department of Transportation*, 935 A.2d 895, 909 (Pa. Cmwlth. 2007); *Doe v. Curran*, 44 Pa. D. & C. 4th 544, 551-552 (Lacka. Co. 2000).

Paragraphs 8 - 12 and 27 of the complaint contain allegations concerning Lloyd Thomas' alleged history of drug use, strange or threatening actions, and past use of firearms in an unsafe manner. Those allegations would only be relevant to the negligent entrustment or supervision claim asserted against Hayden Thomas, which has been dismissed for the reasons stated in section II(B) above. As

a consequence, the averments in paragraphs 8 - 12 and 27 of the complaint are no longer material or appropriate to the supporting proof for the remaining causes of action in this matter.

Lloyd Thomas further seeks to strike the averments of paragraphs 37 and 50, which allege that "Lloyd Thomas 'chased down' plaintiff's decedent and shot him in the back," and that Lloyd Thomas intentionally shot the decedent "in the back and/or body while he was either walking, running and/or retreating from the defendant Lloyd Thomas." (Docket entry no. 1 at ¶¶ 37, 50). Unlike the allegations in paragraphs 8 - 12 and 27, the factual averments in paragraphs 37 and 50 are relevant to the issue of whether Lloyd Thomas acted outrageously so as to warrant the recovery of punitive damages. *See, e.g., Trotman v. Mecchella*, 421 Pa. Super. 620, 625, 618 A.2d 982, 985 (1992) (defendant's random shooting of a BB gun out of a moving car "was sufficiently outrageous to support an award of punitive damages."). Hence, those allegations are neither immaterial nor inappropriate to the claims being asserted. As a result, paragraphs 8 - 12 and 27 of the complaint will be stricken as impertinent, but the request to strike paragraphs 37 and 50 will be denied.

## (E) EMPLOYER DUTIES

Hayden Thomas has also demurred to the estate's contention that Hayden Thomas was negligent "for failing to implement policies and procedures or to control Lloyd Thomas as an employer must control an employee." (Docket entry no. at ¶ 12). Hayden Thomas posits that since "Lloyd Thomas was not an employee of Hayden

Thomas and plaintiff has not pleaded that Lloyd Thomas was an employee of Hayden Thomas," paragraphs 58, 75 and 84 containing "averments relating to the duty of an employer to control the conduct of an employee" should be stricken. (*Id.* at ¶¶ 22-23). In light of the dismissal of all claims against Hayden Thomas in section II(B) above, the objections to those averments are moot.

## "DEFENDANTS" ALLEGATIONS

In its final preliminary objections, The Outdoorsman challenges the repeated use of the generic term "defendants" in the complaint without any identification as to which particular defendant is being referenced. The Outdoorsman notes that "plaintiff has improperly combined claims against each defendant in paragraphs that name all defendants," and has "lumped together all allegations of negligence in paragraphs" that merely make bald references to "defendants." (Docket entry no. 12 at ¶¶ 25, 33). Due to the general use of the word "defendants" in paragraphs 58 - 79, and 84 - 86 of the complaint, The Outdoorsman has apparently been included in averments which "have no applicability to The Outdoorsman, Inc., particularly where they relate to the actual shooting, the use of drugs or the use of alcohol." (*Id.* at ¶¶ 28-29). The estate submits that the complaint, "as a whole, fairly and adequately places the defendant on notice of the facts and allegations made against them (*sic*)," and argues "that defendant has the ability to utilize discovery through interrogatories and depositions should they (*sic*) wish to have more specifics." (Docket entry no. 17 at p. 11).

The recurring use of the ubiquitous term "defendants"

or phrase "all defendants," coupled with the grammatical inconsistencies present throughout the complaint, make it virtually impossible to decipher the underlying factual assertions and to determine what averments apply to which defendants. For example, paragraphs 58 through 79 aver that "all defendants" had a duty "to only hire" certain types of employees, "to have policies and procedures in place," "to train its employees and/or tenants," "to have random drug and alcohol checks on its employees," to implement "procedures which requires (*sic*) its employees to not shoot someone and especially in the back," "to complete criminal background" checks, "to have inspected the gun, firearm and/or weapon to be sure it would not cause injury to persons," to "securely, properly and reasonably restrain himself," "not to use illegal substances" and "to have his emotions and actions under such control and to be attentive to any non-threatening conduct and/or malfunctioning conditions which would have averted this incident." (Docket entry no. 1 at ¶¶ 58-79).

Similarly, paragraph 84 of the complaint itemizes in numerous subparagraphs the actionable "conduct of defendants." (*Id.* at p. 19). By virtue of the utilization of the nonspecific word "defendants," the estate has averred that Lloyd Thomas was negligent or recklessly indifferent based upon his "[f]ailure to have random drug and alcohol checks on its employees," "[f]ailure to not follow (*sic*) defendants' policies and procedures," "[f]ailure to complete criminal background or follow other applicable law," and "[f]ailure to properly and adequately document what had occurred at the Corporation in reference to this incident as mandated by law." (*Id.* at ¶ 84 (n), (q), (r) and (ee)).

Due to that same lack of specificity, the estate apparently asserts that The Outdoorsman's negligent and wanton conduct included the "[f]ailure to properly diagnose and treat the conditions," "[f]ailure to properly examine," and "[f]ailure to take proper evasive actions so as to avoid the shooting and/or not staying in his house." (*Id.* at ¶ 84 (m), (u) and (nn)).

A complaint must give each defendant fair notice of the plaintiff's claims which the defendant will have to defend, and also provide a summary of the material facts that support those claims. *Yacoub v. Lehigh Valley Medical Associates, P.C.*, 805 A.2d 579, 588, (Pa. Super. 2002), *app. denied*, 573 Pa. 692, 825 A.2d 639 (2003); *Murray v. Haggerty*, 2 Pa. D. & C. 5th 338, 346-347 (Lacka. Co. 2006). The use of the word "defendant" or "defendants," without specifying by name which particular defendant is being referenced in a complaint, has been denounced for failing to furnish proper notice to the defendant concerning which claims are being asserted against that defendant. *See Davitt v. Easton Warren Urology*, 2009 WL 6969705, at * 5 (Northampton Co. 2009) ("While a complaint must be viewed as a whole, a defendant should not be left to hunt and peck through a complaint in order to decipher what paragraphs could possibly be directed at him or could possibly be pertinent to a particular count of a complaint - - this is particularly so, as here, where there are multiple defendants involved in a suit."); *Mansour v. Gnaden Huetten Memorial Hospital,* 3 Pa. D. & C. 5th 149, 154 (Monroe Co. 2007) ("Reviewing paragraph 57 of plaintiff's second amended complaint, we believe that it is necessary for the plaintiffs to set forth specifically

which defendants failed to treat and/or admit [plaintiff] to the hospital which amounted to a flagrant, reckless and gross deviation from the ordinary standard of care."). For the reasons stated above, the complaint in this matter fails to provide Lloyd Thomas and The Outdoorsman with sufficient notice of what duties of care and claims of negligence and wanton misconduct are being advanced against them. Consequently, the estate will be directed to file an amended complaint eliminating the use of the term "defendants" and the phrase "all defendants" in paragraphs 58 - 79 and 84 - 86 of the complaint and to identify by name which defendant is being charged with certain duties and misconduct in this case. An appropriate order follows.

## ORDER

And now, this 10th day of May, 2013, upon consideration of the "preliminary objections of Hayden Thomas and The Outdoorsman, Inc." and the "preliminary objections of defendant Lloyd Thomas," the memoranda of law submitted by the parties, and the oral argument of counsel, it is hereby ordered and decreed that:

1. The preliminary objection of defendant, Hayden Thomas, in the nature of a demurrer is sustained and the claims asserted against defendant, Hayden Thomas, are dismissed on the basis of legal insufficiency;

2. The preliminary objections of defendants, Lloyd Thomas and The Outdoorsman, Inc., to the claim for punitive damages in court IV of the complaint are sustained in part and overruled in part. Within the next twenty (20) days, the plaintiff shall file an amended complaint setting

forth the claim for punitive damages in count III of the complaint entitled "Survival Action," rather than as a separate cause of action in count IV of the complaint. In all other respects, the preliminary objections to the claim for punitive damages are overruled;

3. The preliminary objections of defendant, Lloyd Thomas, seeking to strike certain allegations of the complaint on the grounds that they contain scandalous and impertinent matters are sustained in part and overruled in part. In light of the dismissal of all claims against defendant, Hayden Thomas, the allegations contained in paragraphs 8 - 12 and 27 of the complaint are stricken as impertinent pursuant to Pa.R.C.P. 1028(a)(2). The preliminary objections to paragraphs 37 and 50 of the complaint are overruled inasmuch as those averments are material to the punitive damages claim against defendant, Lloyd Thomas;

4. The preliminary objections of defendant, Hayden Thomas, to paragraphs 58, 78 and 84 of the complaint are dismissed as moot; and

5. The preliminary objections of defendant, The Outdoorsman, Inc., to paragraphs 58 -79 and 84-86 of the complaint are sustained, and within the next twenty (20) days, plaintiffs shall file an amended complaint specifically identifying which allegations are applicable to what defendants in those particular paragraphs.